UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

           v.

LEONIDAS SIERRA, et al.,

                Defendants.

               No. 11 Cr. 1032 (PAE)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT NELSON JORGE-MARTINEZ'S MOTION FOR
## <u>REVOCATION OF DETENTION ORDER</u>

STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Attorneys for Nelson Jorge-Martinez*

**Table of Contents**

**Page**

I.  FACTUAL BACKGROUND ................................................................................................1

   A.   The Charges ......................................................................................................1

   B.   Voluntary Surrender and Detention Hearing ...........................................................2

   C.   Government's Argument on Risk of Flight ...............................................................2

   D.   Defense Argument on Risk of Flight .......................................................................4

   E.   Government Rebuttal .............................................................................................5

   F.   Proposed Bail Package ..........................................................................................5

   G.   The Court's Ruling ...............................................................................................5

II.  ARGUMENT ...........................................................................................................6

   A.   Mr. Jorge-Martinez Was Not A Fugitive .................................................................6

   B.   The Magistrate Judge Failed to Accord Proper Weight to Mr. Jorge-
        Martinez's Voluntary Surrender .............................................................................9

CONCLUSION...........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*United States v. Belimex Corp.*,
    340 F. Supp. 466 (S.D.N.Y. 1971)........................................................................................7, 8

*United States v. Eng*,
    951 F.2d 461 (2d Cir. 1991)..................................................................................................8

*United States v. Florez*,
    447 F.3d 145 (2d Cir. 2006)..................................................................................................7

*United States v. Jones*,
    566 F.Supp.2d 288 (S.D.N.Y. July 17, 2008) .......................................................................1

**STATUTES**

Title 18, United States Code, Section 3145(b) ........................................................................1, 7

Title 21, United States Code, Section 846 ..................................................................................1

**BOOKS AND ARTICLES**

*Black's Law Dictionary* 671 (6th ed. 1990)...............................................................................7

Defendant Nelson Jorge-Martinez respectfully submits this memorandum of law in support of his motion pursuant to Title 18, United States Code, Section 3145(b) to revoke the Magistrate Judge's Order dated March 12, 2012 detaining him pending trial on the grounds of flight risk.[1]   For the reasons set forth herein, we believe the Magistrate Judge's decision incorrectly characterized Mr. Jorge-Martinez as a fugitive and failed to give proper weight to the fact that he voluntarily surrendered on these charges.  Absent these findings, there was no basis to detain Mr. Jorge-Martinez.  Accordingly, this Court should vacate the Order and release Mr. Jorge-Martinez on a personal recognizance bond.

## I.      FACTUAL BACKGROUND

### A.      <u>The Charges</u>

Count One of the Indictment charges multiple defendants allegedly associated with the Bronx Trinitarios Gang ("BTG") with participating in a racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d).   Count One asserts that the BTG members engaged in narcotics trafficking, attempted murder and murder to advance the goals of the gang. Count Two charges multiple defendants with participation in a conspiracy to distribute cocaine, marijuana, oxycodone and suboxone, in violation of Title 21, United States Code, Section 846. Counts Three and Four charge various defendants with firearms offenses, in violation of Title 18, United States Code, Sections 922 and 924.

---

[1] This review is de novo.  *United States v. Jones*, 566 F.Supp.2d 288, 289 (S.D.N.Y. July 17, 2008).

Mr. Jorge-Martinez, whose name appears near the bottom of the caption, is charged only in Count Two (narcotics trafficking).  He is not alleged to have belonged to the BTG, and is not charged with committing any act of violence.

### B.    Voluntary Surrender and Detention Hearing

Mr. Jorge-Martinez was charged in Indictment S1 11 Cr. 1032, filed December 5, 2011, and unsealed on December 7, 2011, following the arrest of numerous defendants in a coordinated take-down.  Mr. Jorge-Martinez, who was not in New York at the time, voluntarily surrendered to DEA agents on March 5, 2012, at which time this firm was appointed to represent Mr. Jorge-Martinez as CJA counsel.

On March 12, 2102, Mr. Jorge-Martinez appeared for a detention hearing before Magistrate Judge Francis.  At the hearing, the Government sought detention of Mr. Jorge-Martinez both as a danger to the community and risk of flight, although the Government asserted that risk of flight was its "stronger argument" for detention.  Tr. 4, 7. [2]

### C.    Government's Argument on Risk of Flight

At the outset of its argument on risk of flight, the Government asserted that Mr. Jorge-Martinez "was a fugitive for approximately three months."  Tr. 7.  The Government came to this conclusion because, it stated, the bulk of the defendants were arrested in a "takedown" on December 7, 2011, whereas Mr. Jorge-Martinez had only surrendered the week before the detention hearing.  Tr. 7.  The Government advised the Court:

> So the defendant was a fugitive for approximately three months.
> We know that he knew he was a fugitive, but he apparently was

---

[2] A copy of the March 12, 2012 Detention Hearing's Transcript is attached hereto as Exhibit 1 to the Declaration of Alejandro G. Rosenberg.  We do not address in detail the Government's arguments regarding dangerousness since the Magistrate Court declined to rule on that basis. We are of course available to address that issue during oral argument.

> trying to get money for a lawyer during the time he was a fugitive
> and then at some point decided that it was finally time to turn
> himself in.  It's indication to us that this defendant wasn't taking
> the fact that he knew he was wanted particularly seriously, that he
> waited so long to turn himself in to the authorities.  Certainly, he
> should be commended that he turned himself in to the authorities,
> but it's of concern to the Government that he waited so long to do
> so while the marshals were actually searching for him in numerous
> locations and were unable to find him.

Tr. 7-8.

In response to a question from the Magistrate Judge as to "why you know that he was

actually a fugitive at that point," (Tr. 8), the Government responded as follows:

> Your Honor, I'm trying to – I've had so many in this case.  I
> believe and I – I believe it's that he – I believe I was contacted by a
> lawyer for Mr. Martinez who said that his client wanted to turn
> himself in.  That could be incorrect.  Perhaps the defendant's – and
> remember we spoke about this – perhaps they can offer a little bit
> more information about that.  But as I stand here right now,  I can't
> remember exactly why we knew.

Tr. 8.  The Government concluded by attempting to address the significance of the fact that Mr.

Jorge-Martinez had voluntarily surrendered:

> However, he did eventually turn himself in, that's true, but he may
> not have known how serious the charges were against him and how
> strong the Government's proof against him.  Now he does, Your
> Honor, and it's certainly the most serious charge he's ever faced,
> giving a strong incentive to flee.

Tr. 8-9.

The remainder of the Government's argument on risk of flight principally consisted of

the following assertions: (1) Mr. Jorge-Martinez was not currently employed; (2) he was not a

U.S. citizen and therefore faced deportation if convicted; and (3) he had strong family ties to the

Dominican Republic.  Tr. 9-10.  The Government also asserted that "the defendant doesn't have

an extremely serious criminal record, however he does have one," noting he had four drug

related arrests between 2009 and August 2011.  Tr. 6.  The Government also acknowledged that several of these cases have been dismissed.  Tr. 7.

**D.**      **Defense Argument on Risk of Flight**

Defense counsel presented the court with the following uncontested facts relating to the circumstances surrounding Mr. Jorge-Martinez and his voluntary surrender:

Mr. Jorge-Martinez lived in the Bronx from 2005 until late 2011 when he moved to Boston (prior to the unsealing of the instant Indictment) looking for a job and cheaper housing costs.  Tr 11-12.  At the time he was living off monthly disability payments of approximately $800 a month  (Tr. 12:14-16).  He found out about the existence of the charges in a phone call with his father, Nelson Jorge-Collado.  Tr. 12.  His father had been in contact with the Marshal's Service, and had advised them that his son was in Boston, was scared, and  was trying to get money for a lawyer.  Tr. 12-13.  The family did not know that counsel could be appointed free of charge.[3]  Tr. 13.  Mr. Jorge-Martinez came back to New York to surrender when his father offered to accompany him through the process.  Tr. 13.

Responding to the Government's other arguments on flight risk, the defense noted that Mr. Jorge-Martinez: (1) was a lawful permanent resident of the United States; (2) had been gainfully employed at Titan Plastics until he fell down a stairway and seriously injured his ankle requiring surgery and frequent physical therapy; (3) relied on his disability payments as a means of financial support; and (4) had numerous family members in the New York area, including his father, an auxiliary officer with the NYPD.  Tr. 11-12.

---

[3] As set forth during the hearing, Mr. Jorge-Martinez apparently never had the benefit of appointed counsel in any of his previous encounters with the New York State court system.  *See* Tr. 13.

Defense counsel explained that Mr. Jorge-Martinez had never been charged with any felonies or violent crimes, and had been convicted of only very minor offenses. Specifically, defense counsel noted that one of Mr. Jorge-Martinez's convictions stemmed from an incident in October 2009 when, on his first day at work at Titan Plastics, he accidentally hit a fire alarm button, leading to his arrest for disorderly conduct which in turn resulted in a conditional discharge and $250 fine. Tr. 14. Mr. Jorge-Martinez was also convicted in connection with a trespass charge in 2011 for which he received a conditional discharge. *See* Pretrial Services Report and Criminal History Report.

**E.      Government Rebuttal**

At the conclusion of the defense presentation, the Government noted that "we had received information that he was in Boston and that he knew about the case and that he was not coming back from Boston, and that was from cooperating witnesses and from the Marshals." Tr. 18.

**F.      Proposed Bail Package**

At the detention hearing, defense counsel proposed the following bail conditions: a $100,000 personal recognizance bond; two financially responsible co-signers (his father and grandfather); cash security of $1700 to be posted by his father; home detention with electronic monitoring; strict Pre-Trial supervision; drug testing; and surrender of his passport. Tr. 16, 17.

**G.      The Court's Ruling**

After hearing argument, the Magistrate Judge held that the Government had sustained its burden of demonstrating that the defendant presented a risk of flight such that there were no conditions that would reasonably assure his return to court. Tr. 19.

The Magistrate Judge noted that the defendant faced a five-year mandatory minimum if convicted. Tr. 19-20. The Magistrate Judge stated that while Mr. Jorge-Martinez did have

significant local ties, he also had ties to the Dominican Republic and could be deported if convicted.  Tr. 20.  The Magistrate Judge noted that "he has a series of arrests, some of which resulted in convictions, and while they are not for terribly serious charges, some of them are drug-related and they reflect an inability on the part of the proposed co-signers to exercise the kind of moral suasion that would give me comfort in releasing him on bond."  Tr. 20.

Turning to the issue of whether the defendant had been a fugitive, the Magistrate Judge made the following findings:

> In addition, it's undisputed that he was aware of the charges here for a substantial period of time and did not surrender.  Whether he was in this city at the time that the charges came down or whether he was in Boston I think is not terribly significant.  The point is that for some months he was aware of the charges and did not return.  And while it is commendable that he ultimately did surrender voluntarily, I think given the nature of the charges and his prior record that that is not sufficient to warrant his release.

Tr. 20.

Accordingly, the Magistrate Judge ordered  Mr. Jorge-Martinez's detained pending trial, and did not reach the issue of dangerousness.  Tr. 20-21.

## II.    ARGUMENT

The Magistrate Judge erred in finding, under the totality of the circumstances, that Mr. Jorge-Martinez posed a risk of flight.

### A.    Mr. Jorge-Martinez Was Not A Fugitive

First, we respectfully submit that, based on the undisputed facts below, the Magistrate Judge and the Government improperly characterized Mr. Jorge-Martinez as a "fugitive," a label which undoubtedly led in large part to the decision to detain him pending trial.

A fugitive is commonly defined as a person who, having committed a crime, flees from the jurisdiction of a court where the crime was committed or departs from his usual place of

abode and conceals himself within the district.  *Black's Law Dictionary* 671 (6th ed. 1990).  The

law in this Circuit is clear that an individual who is located outside the jurisdiction, but who has

undertaken no steps to avoid arrest or prosecution within the jurisdiction, is not a "fugitive" for

purposes of tolling the statute of limitations under Title 18, United States Code, Section 3290.

Specifically, the Second Circuit has concluded that "a person's mere absence from a

jurisdiction is insufficient, by itself, to demonstrate flight under § 3290 . . .; [rather,] there must

be proof of the person's intent to avoid arrest or prosecution."  *United States v. Florez*, 447 F.3d

145, 150-51 (2d Cir. 2006).  When the individual was not present in the jurisdiction at the time

of the conduct at issue, and did not reside in the jurisdiction at any time thereafter, he may not be

considered a fugitive simply because he remains outside of the jurisdiction.  *United States v.*

*Belimex Corp.*, 340 F. Supp. 466, 470 (S.D.N.Y. 1971) ("[The defendant] may not be considered

to have '*fled* from justice' when he was never within the jurisdiction of the United States to

begin with, except at a time prior to the commission of the offenses charged.") (emphasis in

original).  Only when the individual receives notice of the charges against him and voluntarily

remains outside of the jurisdiction might there be grounds for labeling him a fugitive.  *United*

*States v. Eng*, 951 F.2d 461, (2d Cir. 1991) ("a defendant with notice of criminal charges who

actively resists returning from abroad to face those charges is a fugitive from justice"); *Belimex*,

340 F. Supp. at 470 ("Had [the defendant] received notice of either of the indictments filed

against him, and had he then voluntarily remained outside of the jurisdiction, there might be

grounds for applying the fugitive status to this defendant.").

Applying these principles to the instant case, Mr. Jorge-Martinez  should not have been

considered a fugitive with respect to any part of the three-month period that preceded his

voluntary surrender, as the Government asserted.  *See* Tr. 7-8 ("So the defendant was a fugitive for approximately three months").

Specifically, it is undisputed that at the time the Indictment was unsealed, Mr. Jorge-Martinez was already living in Boston and had moved there for reasons wholly unrelated to this case.  *See* Tr. 11-12.   Nor did the Government ever suggest that Mr. Jorge-Martinez intended to remain beyond the reach of the law once he became aware of the charges, as would be required to characterize him as a fugitive.  To the contrary, the undisputed evidence reflects that Mr. Jorge-Martinez was trying to make the necessary arrangements to find counsel and turn himself into the authorities.  *See* Tr. 7-8 (prosecutor notes that "he apparently was trying to get money for a lawyer during the time he was a fugitive");  Tr. 12-13 (defense counsel states that Mr. Jorge-Martinez's father had advised the Marshal's Service that his son was in Boston trying to get money for a lawyer).  Indeed, the prosecutor  personally confirmed this sequence of events, stating " I believe I was contacted by a lawyer for Mr. Martinez who said that *his client wanted to turn himself in*."  Tr. 8 (emphasis added).

Far from establishing the defendant was a fugitive, the available evidence indicates just as plausibly that Mr. Jorge-Martinez and his father honestly, if mistakenly, believed they needed to retain private counsel in order to arrange for his voluntary surrender, and were endeavoring to do so during the applicable three-month time period, even to the point of having one such private lawyer contact the U.S. Attorney's Office on Nelson's behalf.[4]   The available evidence, in short, illustrates that Mr. Jorge-Martinez was acting in good faith, not in an attempt to evade prosecution.

---

[4] Defense counsel noted at the hearing that the family did not know Mr. Jorge-Martinez could obtain legal services free of charge through the CJA program.  Tr. 13.

**B.     The Magistrate Judge Failed to Accord Proper Weight to Mr. Jorge-
        Martinez's Voluntary Surrender**

The Magistrate Judge also failed to give proper weight to the fact that Mr. Jorge-Martinez
voluntarily surrendered.

First, while the Magistrate Judge may have been technically correct in observing that Mr.
Jorge-Martinez was "aware of the charges here and did not surrender" (Tr. 20), the Magistrate
Judge ignored the undisputed facts elicited at the hearing regarding the legitimate reasons for that
delay, *i.e,* the defendant's effort to obtain counsel and negotiate a self-surrender.

Second, the Magistrate Judge and the Government failed to explain how a defendant
choosing to voluntarily surrender could nevertheless constitute a risk of flight.  The prosecution
emphasized that Mr. Jorge-Martinez was not a U.S. citizen, faced deportation if convicted, and
purportedly had strong ties to the Dominican Republic.  Tr. 9-10.  If Mr. Jorge-Martinez had
intended to avoid the charges, and assuming the Government were correct about his ties abroad,
then he easily could have done so by leaving the country during the three-month period leading
up to his self-surrender.  That he did not do so speaks volumes about his trustworthiness and
good faith.

As this Court noted in a recent bail appeal by Dave McPherson, a co-defendant in the
instant case: "[a]t some level I think a defendant is not affirmatively obligated to surrender.  *Had
he done so, that would have been very strong evidence in his favor with respect to a lack of risk
of flight.*  (*See* Ex. 2 at 35:1-4) (emphasis added).[5]  Mr. Jorge-Martinez should have received the
same credit, but instead he was penalized for taking too long to self-surrender.

---

[5] *See* Excerpt from March 9, 2012 transcript, attached hereto as Exhibit 2.  Ultimately the Court
detained McPherson based on evidence that he was in hiding avoiding arrest and, according to a

(Continued…)

9

**CONCLUSION**

Mr. Jorge-Martinez does not pose a risk of flight.  He is only named in a single substantive count which does not involve any alleged gang membership or violence.  He has a very minimal criminal history with no prior felony charges and no drug convictions.  He has strong ties to his father in the Bronx, an NYPD auxiliary officer who helped arrange for his voluntary surrender.

The Magistrate Judge erred in considering him to have been a fugitive, and in failing to properly consider the compelling circumstances under which he ultimately chose to voluntarily surrender.  Absent these erroneous findings, we submit that Mr. Jorge-Martinez would have been granted bail.  Accordingly, we respectfully urge the Court to revoke the Magistrate's Detention Order, dated March 12, 2012 and release Mr. Jorge-Martinez on a personal recognizance bond with the various conditions described above.

Dated: New York, New York          Respectfully submitted,
       May 29, 2012

                                    /s *Evan T. Barr*
                                   Evan T. Barr
                                   Alejandro G. Rosenberg
                                   STEPTOE & JOHNSON LLP
                                   1114 Avenue of the Americas
                                   New York, NY 10036
                                   (212) 506-3900

                                   *Attorneys for Nelson Jorge-Martinez*

---

source, preparing to flee the country.  Marshals were forced to apprehend Mr. McPherson based on a source's information, and found him hiding in his girlfriend's apartment.