```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/6/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES                                               :
                                                            :    S5 11 Cr. 1032 (PAE)
              -v-                                           :
                                                            :    ORDER
CARLOS URENA and LIMET VASQUEZ,                             :
                                                            :
                         Defendants.                        :
                                                            :
------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

  Between March 10, 2014 and April 29, 2014, the Court presided over trial in this case, which arose out of a superseding Indictment charging approximately 75 people with violent crimes and/or narcotics offenses committed in connection with their membership in and/or association with an alleged gang known as the Bronx Trinitarios Gang. A central event at trial was the murder, in Yonkers, N.Y., on the night of September 3, 2005, of Ka'shawn Phillips, then age 16. The purpose of this Order, which the Court issues *sua sponte*, is to draw the attention of the Westchester County District Attorney ("the Westchester D.A.") and the District Administrative Judge for New York's Ninth Judicial District to the evidence at trial as to the roles played by various persons in that murder. In particular, this evidence—which the jury appears to have credited in finding defendants Carlos Urena and Limet Vasquez complicit in the Phillips murder—was factually inconsistent with the theory of criminal liability that the Westchester D.A. pursued in the 2006 trial in *The People of the State of New York v. Juan Martinez*, which resulted in Martinez's conviction for the same murder.

By way of brief background, the evidence at trial—as at Martinez's 2006 trial—showed that Phillips was murdered by a group of Hispanic males which chased him, stabbed him approximately 20 times, and shot him twice, in the vicinity of 78 Saratoga Avenue in Yonkers. There were two shooters. One ("the first shooter") shot multiple times at or in the direction of Phillips but did not kill him. The other ("the second shooter") shot Phillips in the head while he lay on the ground, killing him. *See People v. Martinez*, 873 N.Y.S.2d 128 (2d Dep't 2009) (affirming conviction); 2008 WL 6716071 (prosecution's appellate brief) ("D.A. App. Br.").

As is chronicled in detail in the prosecution's appellate brief in the Martinez case, the theory pursued by the prosecution at Martinez's 2006 trial was that Martinez had been the first shooter. *See* D.A. App. Br., 2008 WL 6716071, at *3–*11. This theory was supported by the testimony of a number of civilian eyewitnesses. On that theory, Martinez was convicted on December 8, 2006, of offenses including second-degree murder. Martinez was tried alone. The evidence at Martinez's trial does not appear to have revealed who Martinez's confederates were, or how or why this group of persons came to attack Phillips. There was, however, evidence at the state trial that Martinez personally had a motive to attack Phillips; as eyewitnesses testified, the two had brawled on Saratoga Avenue the previous day. *Id.*

The recent trial before this Court presented a substantially more fulsome picture of how the Phillips murder was planned and executed. The evidence included, as at the Martinez trial, testimony from law enforcement and civilian witnesses, and physical and forensic evidence, but it also included, for the first time, testimony from five cooperating witnesses: Jose Cruz, Jose Diaz, Juan Franco, Juan Nunez, and Alexander Toribio. Each of

the five had pled guilty to, *inter alia*, murder in aid of racketeering in connection with the Phillips murder. These five witnesses each testified that:

- The murder was instigated by several members of the gang's Yonkers affiliate, including Martinez. In a meeting in Van Cortlandt Park, these Yonkers gang members asked the Bronx Trinitarios to retaliate against Phillips for the brawl the previous day with Martinez. The Yonkers affiliates, including Martinez, explained that they could *not* participate directly in the attack on Phillips lest they be recognized by their Yonkers neighbors. The Bronx Trinitarios gang members agreed to do so.

- These Yonkers affiliates, including Martinez, led some 7-10 Bronx Trinitarios members to Saratoga Avenue in Yonkers. They travelled to Yonkers in two cars. While still in one of the cars, the Yonkers affiliates pointed out Phillips to the Bronx Trinitarios as the person to be attacked. The car driven by the Yonkers affiliates then parked on Elinor Place, some distance south of where Phillips had been standing, at or near 78 Saratoga Avenue.

- While the Yonkers affiliates, including Martinez, waited by their car, the Bronx Trinitarios gang members carried out the fatal attack on Phillips. The first shooter was a Trinitarios gang member who went by the nickname "Campe." The second and fatal shooter was defendant Carlos Urena. Other participants in the attack stabbed and/or hit Phillips while he lay on the ground. These included Cruz and Nunez and, according to Cruz and Nunez, defendant Limet Vasquez.

The evidence at the recent trial was thus fully consistent with Martinez's culpability for the Phillips murder, were that culpability based on an aiding and abetting theory of liability or a conspiratorial theory of liability. The cooperating witnesses' testimony, taken as true, would firmly support a conviction on either theory.

However, the evidence was overwhelmingly *in*consistent with the theory of liability pursued at Martinez's 2006 trial, to wit, that Martinez had been the first shooter. Significantly, one cooperating witness who testified that "Campe"—not Juan Martinez—was the first shooter was "Campe" himself. Alexander Toribio was located by government agents in Florida shortly before trial commenced on March 10, 2014. Toribio admitted (and testified at trial) that his nickname at the time of the murder was "Campe," that he had been among the Trinitarios gang members who had agreed to carry out the Phillips homicide at the behest of the Yonkers

affiliates, that he had been the first shooter on September 3, 2005, and that Urena had been the second. Pursuant to a cooperation agreement, Toribio pled guilty to participating in the Phillips murder. Like the other four cooperators who admitted to participating in that murder, Toribio faces a sentence of up to life imprisonment.

Further, the identity of the first shooter was an issue that the defense vigorously disputed at trial. In an attempt to undermine the credibility of the five cooperating witnesses, Urena and Vasquez called several civilian eyewitnesses who had testified at Martinez's 2006 trial. These witnesses again testified that the first shooter had been Martinez; the reliability of these identifications was challenged, *inter alia*, on cross-examination. In closing arguments, the prosecution and defense disputed whether the cooperating witnesses, including Toribio, or the civilian witnesses, were to be credited as to whether Toribio, or Martinez, had been the first shooter. The verdict, in which the jury convicted Urena of all charges, including murder in aid of racketeering in connection with the Phillips homicide, and found Vasquez to have conspired to commit that homicide, indicates that the jury accepted the cooperators' account of that homicide.

In issuing this Order, the Court does not express a view as to whether or not Martinez's murder conviction should stand in light of the evidence presented at the recent trial; or what the relevant factual or legal inquiries, or the relevant considerations as to the proper exercise of prosecutorial discretion, may be as to that issue. Those are issues outside this Court's authority or proper province. Nor does the Court mean to express a view as to the integrity of the investigation and prosecution that led to Martinez's conviction in 2006. And to be clear, the recent trial did not contain any evidence whatsoever of Martinez's actual innocence.

But having presided over the recent trial and having carefully considered the evidence presented at that trial, the Court is constrained to express grave doubts about the factual validity of the theory of guilt (liability as the first shooter) on which Martinez was tried and convicted of the Phillips murder. The Court accordingly issues this Order to encourage the responsible prosecutor and court to give close attention to this matter.

The Court directs the United States Attorney's Office for the Southern District of New York to serve this Order forthwith on the Westchester County District Attorney, on the District Administrative Judge for New York's Ninth Judicial District, and on Martinez, and to promptly record the fact of such service, once effected, on the docket of this case. The Court also directs the United States Attorney's Office for the Southern District of New York, upon request, to furnish the Westchester County District Attorney and the District Administrative Judge with the transcript, and any admitted evidence, from the recent trial.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: May 6, 2014
New York, New York