1   UNITED STATES DISTRICT COURT

2   SOUTHERN DISTRICT OF NEW YORK
    ------------------------------x

3
    UNITED STATES OF AMERICA,
4
                v.                        11 Cr. 1032 (PAE)
5
    LEONIDES SIERRA, et al.,
6
                   Defendants.
7
    ------------------------------x
8
                                      New York, N.Y.
9                                     November 1, 2013
                                      2:19 p.m.
10

11  Before:

12                  HON. PAUL A. ENGELMAYER,

13                                      District Judge

14
                         APPEARANCES
15
    PREET BHARARA
16      United States Attorney for the
        Southern District of New York
17  NOLA HELLER
    JESSICA ORTIZ
18      Assistant United States Attorneys

19  GREGORY E. COOPER
    RICHARD JASPER
20      Attorneys for Defendant Carlos Urena

21  IRVING COHEN
    CARL HERMAN
22      Attorneys for Defendant Felix Lopez-Cabrera

23  ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
        Attorneys for Defendant Javier Beltran
24  JEREMY SCHNEIDER

25

```
 1              APPEARANCES (Continued)

 2

 3   COLSON & HARRIS LLP
          Attorneys for Defendant Miguel Delance
     DEBORAH COLSON
 4   KRISTEN SANTILLO

 5   MOSKOWITZ & BOOK, LLP
          Attorneys for Defendant Michael Cabrera
 6   AVI MOSKOWITZ
     SUSAN MARCUS
 7
     JAMES E. NEUMAN
 8        Attorney for Defendant Julian Lopez

 9   BOBBI C. STERNHEIM
     CHRISTOPHER ADAMS
10        Attorney for Defendant Raymond Sosa

11   GRAINNE O'NEILL
     ROBERT QUACKENBUSH
12        Attorneys for Defendant Andry Lazala

13   LLOYD EPSTEIN
          Attorney for Defendant Anderson Abreu
14

15   SUSAN KELLMAN
     MARY L. BEJARANO
16   COLLEEN BRADY
          Attorneys for Defendant Carlos Lopez
17
     KARAHNI NKRUMAN
18        Attorney for Defendant Miguel Strong

19   DAVID GLAZER
     JAMES SAYLOR
20        Attorney for Defendant Limet Fasquez

21   RUSSELL T. NEUFELD
          Attorney for Defendant Lizardi
22
     EDWARD WILFORD
23   ALEXANDRA ^TSEITLIN
          Attorney for Defendant Maria Mejia
24
     DAVID GREENFIELD
25   JULIE BRAIN
          Attorneys for Defendant Silverio
```

```
1    ALSO PRESENT:

2         EMMA M. GREENWOOD
          Coordinating Attorney
3
          CRISTINA WEISZ, Spanish interpreter
4         PAULA GOLD, Spanish interpreter

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (In open court)

 2              THE DEPUTY CLERK:  United States against Leonides

 3     Sierra, et al., (S5)11 Cr. 1032.

 4              Government ready?

 5              MS. HELLER:  Yes, good afternoon, your Honor.  Nola

 6     Heller and Jessica Ortiz for the United States.

 7              THE COURT:  Great.  Good afternoon, Ms. Heller and

 8     Ms. Ortiz.

 9              Can everyone hear me?

10              UNIDENTIFIED SPEAKER:  No.

11              THE DEPUTY CLERK:  Marshals, can you shut that back

12     door?  Thank you?

13              THE COURT:  Does that help?  Can people hear me now?

14              THE DEPUTY CLERK:  For defendant Carlos Urena.

15              MR. COOPER:  Good afternoon, your Honor.  Greg Cooper

16     on behalf of Mr. Urena.  Mr. Urena sits in the second row.

17     He's raising his hands.  Your Honor, Mr. Jasper could not be

18     here today.  He has a doctor's appointment.

19              THE COURT:  Very good.  Thank you.

20              THE DEPUTY CLERK:  For defendant Carlos Lopez.

21              MS. KELLMAN:  Good morning, your Honor.  Susan

22     Kellman.  My client is standing at the moment.  I'm assisted

23     today by Colleen Brady, who is behind me.  And, also, by Mary

24     Bejarano, who is with the Southern District Mentoring Program.

25              THE COURT:  Good afternoon.
```

1              THE DEPUTY CLERK:  For defendant Miguel Strong.

2              MR. NKRUMAH:  Good afternoon, your Honor.  Karahni

3    Nkrumah.  Mr. Miguel Strong is standing in the first row right

4    there.  Mr. ^Draytel isn't able to make it today, your Honor.

5    He's out of town.

6              THE DEPUTY CLERK:  For defendant Limet Vasquez.

7              MR. GLAZER:  Good afternoon, your Honor.  David Glazer

8    appearing on behalf of Mr. Vasquez, who is seated on the left

9    in the middle row, Judge.  Also today with me, Judge, is James

10   Saylor, Judge, from Mr. Buchwald's office.

11             THE DEPUTY CLERK:  For defendant Ramon Lizardi.

12             MR. NEUFELD:  Good afternoon, your Honor.  Russell

13   Neufeld for Mr. Lizardi.  Co-counsel is not here.  Mr. Lizardi

14   is sitting in the first row, first seat.

15             THE DEPUTY CLERK:  For defendant Maria Mejia.

16             MR. WILFORD:  Good afternoon, your Honor.  Edward

17   Wilford appearing for Ms. Mejia.  She's seated in the last row

18   by the window.  And also appearing with me is Ms. Alexandra

19   ^Tseitlin from the Southern District Mentoring Program.

20             THE DEPUTY CLERK:  For defendant Yandel Silverio.

21             MR. GREENFIELD:  David Greenfield and Julie Brain for

22   Mr. Silverio.  He's in the second row, second seat from my

23   right, looking in.

24             THE DEPUTY CLERK:  For defendant Felix Lopez-Cabrera.

25             MR. COHEN:  Good morning, your Honor.  Irving Cohen

1    and Carl Herman, appearing on behalf of Mr. Felix

2    Lopez-Cabrera.  He's seated in the second row at the end.

3                THE DEPUTY CLERK:  For defendant Javier Beltran.

4                MR. SCHNEIDER:  Good afternoon, your Honor.  Jeremy

5    Schneider.  Mr. Beltran is in the first row, furthest from you.

6    And my co-counsel couldn't be here today.

7                THE DEPUTY CLERK:  For defendant Juan Franco.

8                MR. COHN:  Good afternoon, your Honor.  Fred Cohn for

9    Mr. Franco.  With me is Angela ^Lipscom, my associate.

10   Mr. Franco is the third person from the left in the first row.

11               THE COURT:  Very good.  Thank you.

12               THE DEPUTY CLERK:  For defendant Miguel Delance.

13               MS. COLSON:  Deborah Colson for Mr. Delance.  He's in

14   the top row in the right.  And with me is Ms. Santillo.

15               THE COURT:  Thank you.  Good afternoon to all of you.

16               THE DEPUTY CLERK:  For defendant Michael Cabrera.

17               MS. MOSKOWITZ:  Good afternoon, your Honor.  Avi

18   Moskowitz and Susan Marcus for Mr. Cabrera, who is in the

19   middle of the first row.

20               THE DEPUTY CLERK:  For defendant Julian Lopez.

21               MR. NEUMAN:  Good afternoon.  James Neuman for Mr.

22   Lopez.  He's in the second row, third in

23               THE COURT:  Good afternoon.

24               THE DEPUTY CLERK:  For defendant Andry Lazala.

25               MS. O'NEILL:  Good afternoon, your Honor.  My name is

1   Grainne O'Neill.  I'm here for Mr. Lazala.  He's in the third
2   row.
3          THE DEPUTY CLERK:  From the defendant Anderson Abreu.
4          MR. EPSTEIN:  Good afternoon, your Honor.  Lloyd
5   Epstein for Mr. Abreu.  He's in the front row.
6          THE DEPUTY CLERK:  For defendant Raymond Sosa.
7          MS. STERNHEIM:  Good afternoon, your Honor.  Bobbi
8   Sternheim and Chris Adams for Raymond Sosa, who is in the
9   second row.
10          THE DEPUTY CLERK:  And discovery counsel.
11          MS. GREENWOOD:  Good afternoon, your Honor.  Emma
12   Greenwood for defense counsel.  And with me is ^Yasnica
13   Mothersil, a legal assistant.
14          THE COURT:  Good afternoon.
15          Okay.  Please let me know if you can't hear what I'm
16   saying.  I'm mindful the acoustics are challenging.
17          This is the first of two conferences in this case that
18   the Court will hold today.  The second one will be at 3:30 p.m.
19   These conferences are for the defendants who have previously
20   been identified as the so-called murder defendants.  As has
21   been my usual practice, I'm going to reserve judgment on any
22   decisions of consequence until after both of these conferences.
23   That is to ensure that the defendants at the 3:30 p.m.
24   conference are not disadvantaged by going second.
25          Let me begin by reviewing the agenda that I have for

today.  First I'm going to review -- really for the benefit of
the defendants, most of all -- the developments in this case
since our last conferences in July.

Second I will call on the government and our discovery
coordinating counsel, Ms. Greenwood, for an update on discovery
issues and open the floor for any issues relating to the
provision of or access to Rule 16 discovery.

Third, I'm going to call upon the government and
defense to update me on the status of the capital review
process and the submission of mitigation submissions in this
case.

Fourth, I will turn to what I regard as the most
important issues to cover today, which involve setting trial
dates for the murder defendants and the proper configurations
of defendants to be tried.

I also in that vein intend to solicit views on the
practices that the Court should hold for future conferences in
this case once the case has been broken up into separate trial
groups.  And I intend today to set a conference date soon for
the group of three defendants as to whom I've already set a
trial date of March 10th.

Next, I want to say just a few words about two pending
motions in the case, one filed by defendant Ramon Lizardi and
the other by defendant Miguel Delance.  I will then, as I
always do, open the floor to other topics that counsel wish to

1     raise, but limit it to topics of relevance to this group.

2          As you know, I'm quite happy to hear issues or

3     concerns of particular relevance to an individual defendant

4     whether relating to defendant specific discovery issues, bail

5     applications, representation issues, or whatnot, but those are

6     properly taken up at individual conferences, not in front of

7     the large group.

8          Finally, at the end I need to make sure we set another

9     conference date and we'll entertain an application for the

10    exclusion of time.

11         So turning, first, to developments since the July

12    conferences, which were held on July 9th and July 12th, just by

13    way of update-- and, again, this is really for the benefit of

14    defendants who I'm mindful do not have access to ECF.

15         As to the Group A defendants who, as you'll recall,

16    were scheduled for trial on January 7th and all of whom pled

17    guilty, at this point I believe that all but one of them has

18    been sentenced.

19         As to the first group of Group B nonmurder defendants,

20    the ones who had been charged in the original indictment

21    brought in December of 2011, they had all been scheduled for

22    trial in early June, and each of them pled guilty.  As of

23    today, all but two of them have been sentenced.

24         Finally, as of the last conference, there was a trial

25    scheduled for this second group of Group B nonmurder

defendants.  These were the ones who were first charged in the

superseding indictment returned in December 2012.  Each of

those cases was also resolved without trial.  They had been

scheduled to go to trial beginning on this past September 16th.

I have not yet had occasion to sentence any of those

defendants, but the sentencing hearings for them are scheduled

shortly.

        Thus, the only remaining defendants who have been

apprehended in this case and who have unresolved issues of

guilt or innocence are the murder defendants.

        In another development since the July conferences, on

September 10th I issued a decision on a discovery dispute made

by defendant Carlos Urena.  The issue had to do with, first,

whether a particular tape of a 9-1-1 call relating to the

murder of Ka'Shawn Phillips constituted Rule 16 material as

opposed to Jencks Act material.

        I held that it was Rule 16 material and, therefore,

subject to pretrial discovery under the terms of Rule 16.

However, as to the second point in dispute, I upheld the

government's decision to redact from that tape identifying

information as to that caller.

        Now, I authorized Mr. Urena to seek again that

information in nonredacted form upon an appropriate showing.  I

understand from a later letter I have received from Gregory

Cooper, counsel for Mr. Urena, that a renewed application may

1    in the future be made on this issue.  That is fine.

2            Mr. Cooper, if you intend to make such a renewed

3    motion-- where are you?

4            MR. COOPER:  I'm over here, Judge.

5            THE COURT:  There you are.  Thank you.  If you intend

6    to make such a renewed motion, I'll take up the typing of that

7    motion for the group of defendants that are scheduled to go to

8    trial on March 10th.

9            The final development to report involves my having set

10   the March 10 trial date for three defendants.  As counsel and

11   the defendants will recall, at the conferences in July, the

12   three defendants charged in connection with the Ka'Shawn

13   Phillips murder -- which is to say, Carlos Urena, Juan Franco

14   and Limet Vasquez -- all requested that a trial date be set for

15   them.  At the time, however, the capital review process had not

16   yet been completed as to those three defendants.

17           I have since been notified by the government that the

18   Department of Justice has not decided to pursue the death

19   penalty as to those three defendants.  Accordingly, after

20   soliciting the views of the government and of defense counsel

21   as to a trial date, I've set down the trial of those three

22   defendants to begin on Monday, March 10, 2014.

23           The government has estimated that that trial will last

24   three to four weeks approximately.  I've set a schedule for

25   pretrial motions in that case under which initial defense

1    motions are due November 22nd.  I will take up the issue of

2    scheduling trials for the other defendants, as I said, later in

3    this conference.

4         Now, that leads me then to an update on discovery

5    issues.  Turning first to the government, I'd welcome a report

6    on any new Rule 16 discovery that has come in or been provided

7    to the defense since the July conferences, if any, and any

8    issues that you're aware of that have arisen with regard to

9    accessing Rule 16 discovery.

10        MS. HELLER:  Your Honor, we are not in possession of

11   any new materials currently.  The only issue that I'm aware of

12   right now is Mr. Cooper has requested of the government certain

13   9-1-1 recordings and Sprint reports from nonfatal incidents of

14   violence with which his client is charged.

15        We are not currently in possession of any of those

16   materials and the agents are attempting to get them.

17   Mr. Cooper and I were corresponding today.  I have promised him

18   that we'll have it for him within a month; hopefully, much

19   sooner.  It's just that it's about 12 or 13 incidents.  It may

20   take some tracking down.  Hopefully we'll get it sooner than

21   that.

22        That's the only outstanding discovery dispute of which

23   I am aware.

24        THE COURT:  Okay.  It doesn't even sound like --

25        MS. HELLER:  It's not even a dispute.

1          MR. COOPER:  Judge, if I may, I'd like to clarify.

2          THE COURT:  I was about to call on Ms. Greenwood.

3          MR. COOPER:  I apologize, Judge.  I'll wait for the

4    issue in terms of --

5          THE COURT:  Sure.

6          Just to take this in sequence, Ms. Greenwood, let me

7    just ask you -- I've received a report from Ms. Greenwood that

8    summarizes from her perspective the work that she has been

9    doing recently, which includes, among other things, updating

10   the database tool that you had very helpfully prepared for

11   the use of all counsel and removing pleading defendants from

12   the lists served that the defense counsel are otherwise

13   accessing.

14         Are you aware, to begin with, of any practical issues

15   with regard to the access, including by the defendants, of the

16   voluminous discovery in the case?

17         MS. GREENWOOD:  I'm not, your Honor.

18         THE COURT:  Anything else you want to take this forum

19   to update counsel about?

20         MS. GREENWOOD:  I don't think so.  As far as I'm

21   concerned, everything's been produced, distributed, and I've

22   not heard of any problems either by counsel or by clients at

23   the MCC.

24         THE COURT:  Very good.

25         Mr. Cooper, I'm turning now to the defense to raise

 1   any issues.  I'm interested not just in disputes or what may

 2   in this case be a potential future dispute, but really also

 3   I'm interested in understanding whether the defense is aware

 4   of any practical problems that they, or especially their

 5   clients, are encountering in accessing discovery materials.

 6           MR. COOPER:  Judge, I can speak only with respect to

 7   my client with respect to accessing.  No, we don't have any

 8   problems.

 9           The reason I rose before is just to sort of clarify.

10   When I made this request of Ms. Heller with respect to

11   9-1-1/Sprint, her original response to me indicated that she

12   expected to turn it all over at one time within 30 days.  And

13   my request is that it should take a lot less but, regardless,

14   that it be turned over on a rolling basis.  In other words,

15   instead of waiting until all of this comes together, whenever

16   the government receives any of that material, provide it to me

17   so that I can begin to review and any investigation and

18   anything further I need rather than at one time sometime the

19   end of November/beginning of December to get that.

20           THE COURT:  Okay.  Thank you.  It doesn't sound at

21   this point like you necessarily have a difference of opinion.

22           MR. COOPER:  We do, Judge, because the initial --

23   unfortunately, the response to my request is 'We'll turn it all

24   over at one time in 30 days.'  So I'm not sure because when

25   Ms. Heller said hopefully we'll get it sooner, I appreciate

1    that, but I'd prefer it whenever the government got any piece

2    of material, to turn it over rather than bundling it and

3    turning it all over at one time.

4              THE COURT:  Thank you, Mr. Cooper.

5              Ms. Heller, anything you want to say in response?

6              MS. HELLER:  I'd say what I responded to Mr. Cooper.

7    They're requesting it as a group; I anticipate they'll get

8    everything in one bunch and that's how we anticipate turning it

9    over.

10             THE COURT:  I guess the hypothetical is in the event

11   you get it in dribs and drabs, will you hold back what you get

12   first until everything is in or will you turn it over on a

13   rolling basis?

14             MS. HELLER:  I don't know, your Honor.  We'll do our

15   best to turn it over as efficiently as possible.

16             THE COURT:  Look, Mr. Cooper, I think it's not at this

17   stage sensible for me to micromanage that sort of a schedule.

18   I think Ms. Heller understands if the government is able to

19   manageably get it in parcels to you, they will do so.  But if

20   we need to take this up further, we'll do it at the conference

21   for your group of defendants.

22             MR. COOPER:  That's fine, Judge.

23             THE COURT:  Any other defense counsel want to raise

24   any discovery issues?

25             Okay.  I'm taking from that implicitly that none of

you are hearing of problems that your clients at the MDC, for

example, are having accessing discovery materials.  I'm glad to

hear that.

The next issue I have on my agenda is the capital

review process.  Again, a little built of an update.  On July

15, 2013, after the last conferences, I issued an order that

set February 3rd, 2014 as the final deadline for defendants to

make mitigation submissions.  That was the date that a number

of defense counsel at the July conferences asked me to set.

However, my order also noted that the longer it took

for a defendant to make a mitigation submission, the longer it

might take for the Attorney General to decide whether to pursue

the death penalty as to that defendant.

And so my order also directed that any defense counsel

who intended to make a mitigation submission after November

1st, 2013, submit by November 1st, 2013 a sworn declaration to

the Court attesting -- and I quote from my order -- "that his

or her client is aware of the potential impact on the trial

schedule of making a mitigation submission after that date and

approves of the decision to do so."

For the record, today is November 1st, 2013.  It is

about 2:30 in the afternoon and I have not yet received any

sworn declarations from defense counsel.

Turning, first, to the government on this point, your

letter of October 24th identified 11 defendants who are capital

1    eligible as to whom the Attorney General has not rendered a

2    decision whether to seek the death penalty.  For the benefit of

3    the defendants, those are Felix Lopez-Cabrera, Carlos Lopez,

4    Luis Beltran, Miguel Strong, Ramon Lizardi, Javier Beltran,

5    Michael Cabrera, Yandel Silverio, Raymond Sosa, Manuel Geraldo

6    and Jugo Cespedes.

7            Your letter to me represented that the government had

8    as of that date, October 24th, received mitigation submissions

9    only as to Lizardi and Geraldo.

10           Since October 24th, has the government received any

11   mitigation submissions?

12           MS. HELLER:  Yes, your Honor.  Today we received a

13   submission for Mr. Cespedes making for a total of three.

14           THE COURT:  So there are eight as to whom no

15   mitigation submission has been made.

16           MS. HELLER:  That's correct.

17           THE COURT:  Since October 24th, 2013, is there any

18   further word from the Attorney General?

19           MS. HELLER:  No, your Honor, just that we are planning

20   on making our global submission shortly, within the month.

21           THE COURT:  Right.  And just as to that-- first of

22   all, I want to commend you for that.  I think that was very

23   welcome news.

24           For the record, for everyone else here, the

25   government's letter of October the 24th represented that in

order to expedite the capital review process, the government
was preparing a global submission which it intended to submit
to the Justice Department in November and that it expected, if
events took their ordinary course, a response in 12 to 16 weeks
after receiving that submission.

        And I take it, Ms. Heller, that that submission would
put the Attorney General in position, at least potentially, to
make a decision as to all those defendants even if some of
them did not take the opportunity to make a mitigation
submission?

        MS. HELLER:  That is correct, your Honor.  And if we
do receive additional mitigation submissions after the global
submission, we'll forward them down to the capital committee
for review.

        THE COURT:  Okay.  Thank you for doing that.  I
think that will help expedite things here.  It's much
appreciated.

        Let me ask the government, is there any additional
information to share at this point that you haven't already
done in your October 24 letter about the state of the capital
review process?

        MS. HELLER:  No, your Honor.

        THE COURT:  Okay.  So turning to the defense, we have
eight defendants who as of today have not yet made mitigation
submissions or, alternatively, submitted to me a sworn

1    declaration explaining that your client is aware of the

2    implications of submitting a mitigation submission after the

3    deadline that-- after the November 1st date.

4           Let me ask those counsel what your intentions are.  Do

5    you intend to submit a mitigation submission?  If so, am I

6    going to be receiving that sworn declaration today?

7           MS. STERNHEIM:  Your Honor, Bobbi Sternheim on behalf

8    of Mr. Sosa.  You will be receiving that declaration and

9    hopefully it will be to your chambers this afternoon.

10          THE COURT:  Very good.

11          MS. STERNHEIM:  I would just request if the marshals

12   could keep Mr. Sosa afterwards and we will have him sign them.

13   We are preparing to make a submission, but it will be later.

14   This has been explained to Mr. Sosa.

15          THE COURT:  That's fine.  As I indicated in the order,

16   it's perfectly fine for a submission to be made up through

17   February the 3rd.  I just want to make sure that your client is

18   aware of the consequences of the timing that you've chosen to

19   make that submission on.

20          MS. STERNHEIM:  Thank you.

21          THE COURT:  Thank you.

22          Other counsel on that list?  Okay.

23          MR. SCHNEIDER:  Jeremy Schneider for Javier Beltran.

24   My partner and co-counsel do intend to make a submission, of

25   course depending on what the government says in their global

```
 1    presentation.  But we are prepared with the February date to

 2    abide by the February date.  I do have --

 3            THE COURT:  Wait a minute.  You're not going to be

 4    receiving the government's global submission.  So your decision

 5    whether to make a mitigation submission is presumably not

 6    conditioned on what the government privately recommends to the

 7    Attorney General.

 8            MR. SCHNEIDER:  No, I understand that, but I guess

 9    it's possible if they make a global recommendation soon, the

10    DC may have an answer before February.  That's possible,

11    right?

12            THE COURT:  Okay.

13            MR. SCHNEIDER:  So separate and apart from that, I

14    have now a declaration signed by David ^Stermin (ph), my

15    co-counsel.  I can give it to you now or file it on ECF.  So we

16    do have that declaration prepared and Mr. Beltran has been

17    advised of the consequences of the February mitigation.

18            THE COURT:  Fine.  I just want to make sure-- that's

19    fine.  I just want to make sure we are receiving that

20    recommendation.  You can do it on ECF.

21            Other defense counsel that is in the back.

22            MS. MARCUS:  Susan Marcus for Michael Cabrera.  And we

23    will be submitting a mitigation submission by the February

24    deadline.  We will be submitting an affidavit to your Honor by

25    this afternoon.
```

```
 1              THE COURT:  Very good.  Thank you.

 2              In the back behind you.

 3              MR. HERMAN:  Carl Herman for Felix Lopez-Cabrera.  We

 4    had some discovery issues which have gotten resolved this week.

 5    Our mitigation submission is in the works so it will be

 6    submitted shortly.  I would say within a couple of weeks,

 7    Judge.  And we will get -- if your Honor thinks it's

 8    appropriate, we'll get the certification to your Honor.

 9              THE COURT:  Please get me the declaration.  I set

10    today's deadline for a reason.  It's really just a way of

11    making sure that, given how long the case has been here, the

12    defendants are aware of the speedy trial consequences, the

13    delay consequences of the timing of such a submission.  So

14    please do get me that.

15              MR. HERMAN:  Yes, sir.

16              THE COURT:  Again, that's for Mr. Lopez-Cabrera?

17              MR. HERMAN:  Yes, sir.

18              THE COURT:  Other defense counsel?

19              MS. KELLMAN:  Susan Kellman for Carlos Lopez.  Your

20    Honor, with respect to Mr. Lopez, we are busily working on his

21    mitigation submission.  We've had a couple of delays, but we've

22    been working very closely with Mr. Lopez in an effort to try to

23    move up some of the obstacles that we've encountered.  We do

24    expect to submit a declaration to the Court this afternoon.

25              THE COURT:  Perfect.  Thank you.
```

1              MS. KELLMAN:  We've been speaking regularly with

2     Mr. Lopez about the delays we've had and he's been very helpful

3     in trying to move it along.

4              THE COURT:  Great.  Glad to hear it.

5              Anyone else?

6              MR. NKRUMAH:  Your Honor, Karahni Nkrumah on behalf of

7     Miguel Strong and Mr. Joshua ^Draytel is the capital counsel,

8     learned counsel.

9              We were unable to submit-- we were unable to make our

10    submission due to delays in interviewing Mr. Strong.  We should

11    have that submission submitted by the end of this month.  And I

12    will have the letter to the Court, if the Court will allow me

13    some leeway, to have the letter to the Court by Monday.

14             THE COURT:  Very good.  Thank you.

15             Anyone else?  All right.  I have not heard from, but

16    they may not be here, counsel for Luis Beltran.

17             MR. COOPER:  I believe he's in the next group, your

18    Honor.

19             THE COURT:  Ramon Lizardi is Mr. Neufeld.

20             MR. NEUFELD:  We submitted it, your Honor.

21             THE COURT:  You're submitted.  Okay.  Very good.

22             Mr. Silverio is Mr. Greenfield.

23             MS. BRAIN:  Julie brain, your Honor.  Good afternoon.

24    We'll have a declaration to your Honor's chambers by the end of

25    the day.

1          THE COURT:  Very good.  Thank you.

2          Mr. Geraldo is the next conference.

3          And Mr. Cespedes?

4          MS. HELLER:  He submitted today, your Honor.

5          THE COURT:  Very good.  Thank you.

6          All right.  The next issue, and I think the most

7  important one for today, involves setting trial configurations

8  and schedules.  Again, just with respect to the one group of

9  murder defendants, I have set down for trial date defendants

10 Carlos Urena, Juan Franco and Limet Vasquez.  That trial

11 begins March 10th.  And I said in the order in which I set that

12 date that I would set out my reasons for doing so.

13         Here they are:  I did so because those three

14 defendants had specifically requested a trial date; because the

15 capital review process as to those three defendants was

16 complete; and because the ^Phillips murder, in which they are

17 all said to have been responsible, supplied a valid basis for

18 joining those three defendants together.  That is, of course,

19 without prejudice for the right of any of those three

20 defendants to seek a severance.

21         I carefully considered the government's alternative

22 suggestion that those three defendants be joined with a group

23 of others, specifically those implicated in the murder of

24 ^Miguel Perez.  I thought that was also a plausible trial

25 management approach, but on balance I chose solely to have the

March 10th group be of the three defendants for this reason:
First, it does not appear that combining the two trials would
reduce -- let alone materially -- the aggregate length of the
two trials.  Instead, it would appear to force in effect twice
as many defense counsel and twice as many defendants to sit for
a joint trial that would be approximately twice as long as
either of the separate trials.  In other words, one two-month
trial as opposed to two separate three- to four-week trials.
Therefore, that seemed to impose a substantial burden on a
large number of people that could be avoided by keeping the two
trials separate.

    Second, a two-month trial as opposed to separate
three- to four-week trials would complicate the process of
getting jurors, which is considerably easier to do in
connection with a three- to four-week trial.

    Third, a seven-defendant trial -- which, again, might
have been narrowed assuming some pleas -- but a seven-defendant
trial was potentially more unwieldly and would have made it
more difficult for the jury to focus on the guilt or innocence
as to any individual defendant than is the situation provided
by a three- or four-defendant trial.

    Finally, I would note that one of the defendants
implicated in the Perez murder, Mr. Lizardi, is still subject
to the capital review process.  I did not want that process to
delay any further getting defendants Urena, Franco and Vasquez

1    to trial.  Those are my reasons for setting the trial on that

2    day as I did.

3          Now, as for the defendants, the three set for trial on

4    March 10th, I'd like to set a next trial date for those three

5    defendants.  I'd like to do so in the next two weeks.  And at

6    that conference I am hoping to get from counsel a preview of

7    any defense motions I would expect to receive.  And I will also

8    use that conference to set all the dates we need leading up to

9    the March 10th trial as well as making myself available to hear

10   any issues that counsel for those three defendants or the

11   government would like to raise.

12         Let me just throw out a date and see if counsel are

13   all available.  Again, we're just looking for the three defense

14   counsel and the government.

15         November 12th at 10 a.m.  Any problem with that,

16   Mr. Cooper?

17         MR. COOPER:  I do, Judge, unfortunately.

18         THE COURT:  November 13th at 10 a.m.

19         MR. COOPER:  That's okay as far as I'm concerned.

20         THE COURT:  Okay.  How about you Cohn?

21         MR. COHN:  I'm fine.

22         THE COURT:  Then we have -- Mr. Buchwald is not here.

23   So Mr. Glazer.

24         MR. GLAZER:  Yes, Judge, I do have a conflict.  I have

25   a Miranda hearing in a homicide state case in New Jersey that's

1   been put down about a month ago.

2          THE COURT:  How about Friday, November 15th at 11:30

3   a.m.

4          MR. COOPER:  I can do that, too, Judge.

5          MR. GLAZER:  That works for me.

6          MR. COHN:  I'm okay.

7          THE COURT:  Government?

8          MS. HELLER:  Yes, I can do that, Judge.

9          THE COURT:  Very good.  I'm going to set a

10  conference down for those three defendants for November 15th at

11  1130 a.m.

12         All right.  Turning then to the ensuing trials after

13  the March 10th trial, in my order of October 18, I directed the

14  government to propose trial configurations of defendants and a

15  logical sequencing of those trials.  The government did so in

16  its letter of October 24th.  I found that letter extremely

17  thoughtful and helpful.

18         In my order of October 18th, I invited defense counsel

19  to comment in writing on the government's proposals and to do

20  so by Wednesday, October 30th.  I also directed any defense

21  counsel who is now seeking the setting of a trial date for his

22  or her client to do so in writing also by Wednesday, October

23  30th.  In response I did not receive any letters, any such

24  submissions by the defense.

25         In light of that, let me tell you what my present

1   intention is so as to solicit any feedback before I commit with

2   finality to such a schedule.

3           First of all, I intend next week to set a trial

4   schedule for the remaining defendants in this case broken out

5   into different configurations.  Setting trial dates now, I have

6   determined, is wise.  It helps assure a speedy trial, even

7   though very few defendants -- indeed, just one defendant, other

8   than the three set for trial on March 10th, that's Maria

9   Mejia -- have at any point asked for such a trial.  I have an

10  independent obligation to make sure that the speedy trial

11  interests of the defendants are respected.  The sooner I set a

12  case down for trial, the sooner the trial will happen.

13          In addition, there are a lot of defendants and counsel

14  here and a lot of schedules to accommodate.  For planning

15  purposes, setting trial dates now, well in advance, which

16  counsel must thereafter respect, helps guard against delay and

17  scheduling conflicts.

18          And I would note that although no defense counsel

19  wrote me in response to my October 18th order, nor did any

20  counsel, government nor defense, ask me not to set a trial

21  date.  My intention is to set configurations for trial

22  consistent with configurations the government has proposed.

23  The configurations at first blush without any joinder having

24  been made are logical.  There appear to be logical connections

25  justifying joinder of the defendants into the groups that the

1    government proposes to try together and the lengths of the

2    trials that the government envisions are manageable ones.

3        In so doing, I am, of course, entirely open to hearing

4    down the road arguments for severance.  And if there is a

5    persuasive meritorious argument for severance of a particular

6    defendant, I will grant it.  We will figure out when and if

7    that point comes whether such a defendant whose case is severed

8    is there to be tried alone or to then be joined in a different

9    group of defendants.  But for the time being, I'm going to use

10   the configurations that the government has proposed.

11       I also am mindful that if the capital review process

12   results in a decision by the Attorney General to seek the death

13   penalty against a particular defendant, I will likely need to

14   revise the schedule, at least presumably as to that defendant.

15   We will cross that bridge when and if we need to.

16       My premise in setting the schedule is that capital

17   charges will not be pursued.  Of course in acting on that

18   premise, I'm not expressing a view as to the proper outcome of

19   the decision that will be before the Attorney General.  I'm

20   merely trying to set a rational schedule based on what I think

21   to be a fair assumption.

22       Now, as to the sequencing of the trials, I expect to

23   set them in the sequence proposed by the government with one

24   exception.  I expect to set the trial that the government

25   identifies as proposed trial three -- meaning involving one

1    defendant, Julian Lopez -- ahead of the trial that the

2    government identifies as proposed trial two, involving four

3    defendants:  Maria Mejia, Lenin Morel, Ramon Lizardi and Miguel

4    Delance.

5         The Lopez trial is focused on the murder of ^Isse

6    Dominguez.  And specifically I am expecting to set that Lopez

7    trial down for the spring, probably in May, so as to create

8    some space for counsel after the conclusion of the trial

9    beginning March 10th.

10        I'm doing that for several independent reasons:

11   First, Julian Lopez is not subject to the capital review

12   process.  Therefore, that process will not and cannot

13   complicate the scheduling of his trial date.

14        By contrast, one of the four defendants in what the

15   government identified as proposed trial two, Mr. Lizardi, is

16   subject to the capital review process, which the government

17   forecasts may not run its course until some 12 to 16 weeks

18   after the government's anticipated submission to the Attorney

19   General in November.  It's certainly entirely possible,

20   therefore, that that process would run its course giving well

21   enough time for a trial in this schedule the government

22   forecast, but we can't be sure of that.

23        Second, as a matter of scheduling, the Lopez trial is

24   shorter and is a better fit for this Court's existing schedule

25   in the spring.  I instead, therefore, intend to set the trial

1    of defendants Maria Mejia, Morel, Lizardi and Delance for, in

2    all likelihood, early July, creating again some space for the

3    May and July trials.  The July trial the government has

4    estimated will last three to four weeks, and the government has

5    asked that there be a good three weeks between the close of one

6    trial and the start of another.  And this would seem to assure

7    that.

8            As to the government's proposed trial number four of

9    nine defendants, I expect to set that down as the government

10   has proposed in September of 2014.  For the record, for the

11   benefit of the defendants who are here, those nine defendants

12   are Felix Lopez-Cabrera, Luis Beltran, Javier Beltran, Michael

13   Cabrera, Miguel Strong, Yandel Silverio, Carlos Lopez, Andry

14   Lazala and Raymond Sosa.

15           The government expects that trial to last between two

16   and three months.  It would be focused on the murders of ^Ramon

17   Casul, David ^Vila Gomez, Irving Cruz, ^Raffe Devarez and

18   Freddie Polanco, among other charged offenses.  A September

19   trial date will give plenty of time for the capital review

20   process to run its course for those among those nine defendants

21   who are subject to that process.

22           As I've stated a number of times, my preference is not

23   to have joint trials involving more than approximately five

24   defendants at once.  However, that trial is ten months away or

25   more.  For now it is reasonable to set all nine defendants down

1    for trial on that date on the assumption, which is very well

2    grounded in experience so far in this case, that not all nine

3    defendants will ultimately go to trial.  In the event that

4    happens, contrary to my expectations, I can then decide whether

5    and how to proceed including whether to break off some of those

6    defendants so as to create a more manageable universe of

7    defendants to be tried at one time.

8           Finally, I expect to set down the proposed trial five

9    for January 2015, again as the government has proposed.  That

10   trial involves five defendants:  Raymond Sosa, Hargelis Vargas,

11   Manuel Geraldo, Anderson Abreu and Jugo Cespedes.  It is

12   focused on the murder of Orlando ^Celegado, among other charged

13   defenses.

14          Under these configurations, only one defendant,

15   Raymond Sosa, would be tried twice which, frankly, given the

16   number of defendants here and overlapping charges, is actually

17   quite an efficient outcome in my estimation.  The government

18   has stated that in advance of the fourth and fifth trials, it

19   would clearly delineate which of Mr. Sosa's charged defenses it

20   would attempt to prove in each trial.  That would clearly be

21   necessary.

22          With that preview of what my intentions are, but my

23   not having committed to specific dates, let me ask the defense

24   now, I've already received the government's view in the October

25   24th letter, whether the defense has any views on this.

1          MS. STERNHEIM:  Your Honor, Bobbi Sternheim on behalf

2     of Raymond Sosa.  I apologize to the Court.  I had been

3     traveling on case-related business and did not see your request

4     for a submission; therefore, I did not.  But I do have issues

5     with regard to the trial dates that may be resolved.

6          I am waiting for Judge Kaplan to determine whether a

7     third defendant would be joined to a case that is supposed to

8     begin in April.  If the third defendant is joined, in all

9     likelihood that trial will be pushed to the fall of 2014 and

10    I would not be available, though Chris Adams would be

11    available.

12          THE COURT:  Mr. Adams would be available in this trial

13    you mean?

14          MS. STERNHEIM:  Yes.

15          THE COURT:  Okay.

16          MS. STERNHEIM:  So I don't know if I would be

17    available for the January trial either, though Mr. Adams would

18    be available.  I would say, however, since Mr. Sosa is the only

19    defendant who is involved in two cases and the fact that one

20    may last as much as three months, I would request that the

21    second trial not start until at least February to give counsel

22    enough time to recoup, deal with other matters, and prepare for

23    the second trial.

24          THE COURT:  All right.  So you're in a unique

25    situation in as much as your client is in the two trials.

1    Look, it seems to me that-- I appreciate what you've said.  In

2    as much as you have a co-counsel who is available, the

3    possibility -- which at this point is conjectural -- that you

4    would not be available, although that's regrettable, doesn't

5    seem to deprive him of the ability to be effectively

6    represented on or about the date set, correct?

7            MS. STERNHEIM:  Absolutely, but as the government put

8    in its footnote, the Court may at some point wish to address

9    the status of learned counsel.  And in Mr. Sosa's situation,

10   regardless of what the Court decides to do, I would ask that

11   the Court consider this an exceptional circumstance.

12           THE COURT:  Well, I did not, frankly, intend to take

13   that issue up.  But in any event, if I were to take up the

14   issue of whether learned counsel would remain on the case, it

15   certainly would seem to me that in the circumstance that the

16   original counsel was unavailable, that would be a compelling

17   reason to retain the learned counsel.  I can't say that I

18   alerted to that issue as to one that merited my intervention.

19           MS. STERNHEIM:  And I apologize for not briefing the

20   Court earlier.

21           THE COURT:  All right.  But then we have the second

22   issue about the trial date for Mr. Sosa, the second trial date.

23   So, in effect, if the September trial lasted on the longer end

24   of what the government estimates, let's say mid-September

25   through mid-December, your application then would be that what

1    I've called the January trial, inasmuch as it, too, involves

2    Mr. Sosa, be scheduled to give a little bit of wiggle room for

3    his smaller legal team to catch their breath.

4              MS. STERNHEIM:  That's correct.

5              THE COURT:  Okay.  I take your point.  I'm not sure it

6    will be pushed to February, but that's relevant to me in

7    deciding when in September to schedule the first trial and when

8    perhaps in January to schedule the second trial.  So I thank

9    you.

10             MS. STERNHEIM:  Just as another footnote to that.  I

11   direct a program at a law school for the first two weeks of

12   January every year.  So if the Court was inclined to set the

13   schedule, I would ask for it to be scheduled for the third week

14   in January.

15             THE COURT:  Thank you.  That's helpful.  I'll make a

16   note of that.

17             Again, I'm not making concrete scheduling decisions

18   now.  I want to hear from counsel on the second conference

19   and I want to reflect on what I've heard, but that's very

20   helpful.

21             Yes.

22             MR. NEUMAN:  James Neuman for Julian Lopez.  You are

23   proposing that he be tried in May.  I have a trial scheduled

24   for May in the Eastern District starting early May.  It's

25   supposed to go about six weeks, so I'm not available May or

1   June.

2          THE COURT:  That's already a set trial date?

3          MR. NEUMAN:  Yes.

4          THE COURT:  When would you be available before then?

5          MR. NEUMAN:  March.

6          THE COURT:  What about April?

7          MR. NEUMAN:  I can do April.

8          THE COURT:  And are you representing Mr. Lopez by

9   yourself?

10         MR. NEUMAN:  By myself.

11         THE COURT:  All right.  Thank you, Mr. Neuman.

12         Anyone else?

13         MR. WILFORD:  Your Honor, with respect to Ms. Mejia,

14  if it's possible that Mr. Neuman, since he's solely defending,

15  and I understand the Court's consideration with respect to the

16  capital review process, but perhaps Mr. Neuman can take my spot

17  and the defendants that you intended to try in July can be

18  moved up to May.  Because we all have to have that

19  consideration, having to review counsel communication with one

20  another, if we have that availability.

21         THE COURT:  All right.  I mean, I'm going to sort out

22  the issue presented by Mr. Neuman.  We'll figure out what to do

23  about that.  But the solution I don't think is going to be to

24  swap the two trials.

25         Do you have a conflict in July?

1           MR. WILFORD:  No, I don't, Judge, not in terms of a

2    trial, but I do every year participate as faculty at the end of

3    July in the college and I'd like to be able to do that.  The

4    government is talking about maybe a four- or five-week trial,

5    three- or four-week trial.

6           THE COURT:  I think the government estimated that the

7    July trial would last --

8           MR. WELLS:  The government's estimate should be for a

9    May trial because we were originally second.

10           THE COURT:  Sorry.  The trial I have in mind for early

11    July, what it called proposed trial two, it anticipated lasting

12    three weeks.

13           When does your conference in July begin?

14           MR. WILFORD:  The last week in July, Judge.

15           THE COURT:  I'll take it under advisement, but I can't

16    make any promises.  A binding trial commitment with another

17    Court is something else, but I appreciate it.

18           MR. WILFORD:  I understand that, Judge.

19           THE COURT:  Anyone else?

20           Okay.  All right.  I'll take this under advisement in

21    conjunction with what I hear at the next conference.

22           Mr. Neuman, it may be that my chambers is in touch

23    with you.  I plan to work through potential dates.

24           MR. NEUMAN:  Very good.

25           MR. WILFORD:  I'm sorry, your Honor.  Perhaps if you

```
1    could move the trial to the last week in June, the beginning,

2    that would accommodate my situation.

3            THE COURT:  All right.  I'll take that under

4    advisement.  Thank you.

5            MR. WILFORD:  Thank you.

6            THE COURT:  All right.  Counsel for the government,

7    anything you want to add having heard the various comments from

8    the defense?

9            MS. HELLER:  No, your Honor.

10           THE COURT:  All right.  The next issue to address

11   involves the working configurations going forward.  Assuming

12   that I set the trials in the sequence and in the configurations

13   that I have indicated I intend to do, my expectation is that

14   the March 10th group of three defendants will henceforth

15   proceed in effect as its own case.  They will have their own

16   conferences and not be part of this large group.

17           And for the purposes of conferences, I would expect to

18   do the same for Julian Lopez.  It seems to me if he's heading

19   for, whenever it gets scheduled, a trial of one to two weeks

20   limited to himself, there's no reason for him to be sitting

21   through these long conferences or you, Mr. Neuman.

22           For the time being, though, my instinct is to keep the

23   other groups, the ones that I have provisionally indicated I

24   expect to set down for trials in July, September and January

25   altogether, and in all likelihood as we get somewhat closer to
```

the first of those trials, we'll break off the earliest of that

group into its own organism.

          Any reason counsel can give to me not to proceed in

that fashion?  Any reason why it makes sense to break things

apart now or keep glued together more defendants that I intend

to?

          MS. HELLER:  That's fine for the government, your

Honor.

          THE COURT:  Thank you.

          MR. WILFORD:  Your Honor, most respectfully, I think

that it may be appropriate with respect to breaking into small

groups, it may be more manageable and direct with respect to

issues related to particular defendants.  Because there may be

some issues that would come up that we would be raising at a

conference of this enormity that shouldn't be raised when it's

something just pertaining to this group of particular finite

defendants.

          THE COURT:  I think your client is in the third group

to be tried, the one I had in mind for approximately July.  I

would expect that, in all likelihood, after one more group

conference down the road, that group would, in effect, be ready

to be broken off and for dates specific to that group to be

set, whether with regard to motions or discovery issues or

whatnot.  So I think in short order that will happen for that

group.

1              MR. WILFORD:  Thank you.

2              THE COURT:  Okay.  The next issue I want to briefly

3      just acknowledge involves two pending sets of motions.  One is

4      by defendant Lizardi seeking certain Brady material and other

5      discovery.  The government has responded to that motion.

6              The other is from defendant Delance also seeking

7      discovery and particulars.

8              I haven't received a response from the government.  My

9      expectation and preference is to resolve both of those motions

10     together.  So what I am waiting on is a response from the

11     government for the Delance motion.

12             Government, how soon can you get me a response?

13             MS. HELLER:  Two weeks, your Honor?

14             THE COURT:  That's fine.  So November 15th.  Okay.

15             All right.  With that I'm at the point in my agenda

16     anyway where I want to open the floor to counsel to raise

17     issues that haven't thus far come up.  Anyone have anything for

18     me?

19             Okay.  The record will reflect that nobody had

20     anything to offer.

21             All right.  The next thing I need to do then is to set

22     a next conference for the murder defendants with the exception

23     of the March 10 defendants and Mr. Lopez.  And I would propose

24     that we do that approximately three months from now, late

25     January/early February.

1          Ms. Hummel, may I have a date?

2          THE DEPUTY CLERK:  Yes.  One moment, please, your

3    Honor.

4          Counsel, how is Thursday, February 6th?  The 6th of

5    February.  It's a Thursday at 2:15.

6          MS. KELLMAN:  Your Honor, I expect to be on trial in

7    February in the Eastern District.  I think the judge does not

8    work on Fridays.  He does his regular calendar on Friday.  So

9    if it's possible to put it on a Friday.

10          THE COURT:  Let's try to do it on Friday.  You're

11    probably not alone in that.

12          THE DEPUTY CLERK:  We can put it down for Friday,

13    February 14th.

14          THE COURT:  Let's move it a little earlier,

15    Ms. Hummel.  Can we try the 7th?

16          MR. COOPER:  Would that be the morning of the 7th,

17    your Honor.

18          THE DEPUTY CLERK:  We can put it down for 3:30 on the

19    7th of February.  Counsel, Friday, February 7th at 11 and

20    12:30.

21          THE COURT:  All right.  Our next conference then will

22    be February 7th at 11 a.m. and at 12:30 p.m.

23          Do I have an application from the government for the

24    exclusion of time until that point?

25          MS. HELLER:  Your Honor, just to clarify, is that for

1    Mr. Lopez as well?

2            THE COURT:  No.  What I'm going to do is once I set

3    a-- I'm going to need to set a trial date for Mr. Lopez.  And

4    my chambers will be in touch with both Mr. Lopez and the

5    government to try to work out a rational date.  I'm going to

6    exclude the time for everybody through February 7th just to be

7    proactive, but there will in short order be a conference with

8    counsel for Mr. Lopez and the government in which we'll get the

9    process moving forward for that case.

10           MS. HELLER:  Your Honor, the government would ask the

11   Court to exclude time between today's date and February 7th in

12   order for counsel to complete their mitigation submissions, in

13   order for the death penalty process to continue, and in order

14   for the parties to begin preparing their motions and for trial.

15           THE COURT:  Very good.

16           Is there any objection to that?

17           MS. KELLMAN:  No, your Honor.

18           THE COURT:  I'm going to exclude the time between

19   today and February 7th for a number of reasons incorporated by

20   reference, but what Ms. Heller has said.  First of all, there

21   remains a lot of discovery and a lot of material for the

22   defendants to master.

23           Second, at this point we now have general trial dates

24   and within several days there will be specific trial dates for

25   each of the defendants.  That, in turn, will no doubt occasion

ferment within the defense group as the defense group prepares

for conflicting trial dates.  The time I'm excluding gives the

defense a particular opportunity to begin preparing for trials

with very high stakes and lots of proofs.

I'm also mindful that at least as to some defendants,

there will be motions pending.  Indeed, there already are for

several defendants.  So I'll exclude the time in the interests

of justice between now and February 7th.

I should add, of course, the capital review process is

underway for quite a number of the defendants in this case and

that independently is a very reason to exclude time.  In any

event, the exclusion is pursuant to 3161 (h)(7)(A) with the

Court having found that the interests of justice outweigh the

interests of the defense and the public in speedy trial.

Anything further from the government?

MS. HELLER:  No, your Honor.

THE COURT:  Anything from the defense?

MR. COOPER:  No.

THE COURT:  Okay.  Within very short order there will,

probably by Tuesday or so, an order from the Court which sets

the relevant trial dates.

Government, my chambers will likely be in touch with

you.

One of the issues which may arise as to the Lopez

trial is the viability of a trial in May which would be

1   inconsistent with your understandable preference not to have

2   trials too close or back to back.  I'll ask you to give thought

3   to that because it's something that is an obvious possibility

4   here.

5            Very good.  Thank you.

6            MS. HELLER:  We'll be available.

7            THE COURT:  We stand adjourned.

8            (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25