1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF NEW YORK
     ------------------------------x
3
     UNITED STATES OF AMERICA,
4
                v.                          11 Cr. 1032 (PAE)
5
     LEONIDES SIERRA, et al.,
6
                    Defendants.
7
     ------------------------------x
8
                                        New York, N.Y.
9                                       November 1, 2013
                                        3:44 p.m.
10

11   Before:

12                   HON. PAUL A. ENGELMAYER,

13                                        District Judge

14                        APPEARANCES

15
     PREET BHARARA
16        United States Attorney for the
          Southern District of New York
17   NOLA HELLER
     JESSICA ORTIZ
18        Assistant United States Attorneys

19   LEE GINSBERG
          Attorney for Defendant Luis Beltran
20
     GARY VILLANUEVA
21        Attorney for Defendant Manuel Geraldo

22   CESEAR de CASTRO
          Attorney for Defendant Lenin Morel
23
     JAMES BRANDEN
24   BEVERLY VAN NESS
          Attorneys for Defendant Jugo Cespedes
25

APPEARANCES (Continued)

ERIK ZISSU
    Attorney for Defendant Hargelis Vargas

ALSO PRESENT:

    EMMA M. GREENWOOD
    Coordinating Attorney

    CRISTINA WEISZ, Spanish interpreter
    ISOLINA BERNHANDT, Spanish interpreter

```
 1              (In open court)

 2              THE DEPUTY CLERK:  United States v. Leonides Sierra,

 3    et al., (S5)11 Cr. 1032.

 4              Government ready?

 5              MS. HELLER:  Yes.  Good afternoon again, your Honor.

 6    Nola Heller and Jessica Ortiz for the United States.

 7              THE COURT:  Good afternoon again.

 8              THE DEPUTY CLERK:  For defendant Luis Beltran.

 9              MR. GINSBERG:  Good afternoon, your Honor, Lee

10    Ginsberg.  I'm appearing for myself obviously and my partner

11    ^Louis Freeman.

12              THE COURT:  Very good.  Good afternoon.

13              MR. GINSBERG:  Good afternoon.

14              THE DEPUTY CLERK:  For defendant Manuel Geraldo.

15              MR. VILLANUEVA:  Good afternoon, your Honor.  My name

16    is Gary Villaneuva appearing for Mr. Geraldo.

17              THE COURT:  Good afternoon.

18              THE DEPUTY CLERK:  For defendant Lenin Morel.

19              MR. de CASTRO:  For Mr. Morel, Cesear de Castro.

20              THE COURT:  Good afternoon.

21              THE DEPUTY CLERK:  For defendant Jugo Cespedes.

22              MR. BRANDEN:  Good afternoon, your Honor.  Jim Branden

23    for Mr. Cespedes.  I'm with learned counsel Beverly Van Ness.

24              THE COURT:  Good afternoon.

25              THE DEPUTY CLERK:  For defendant Hargelis Vargas.
```

1          MR. ZISSU:  Good afternoon, your Honor.  Eric Zissu

2     for the defendant Hargelis Vargas.

3          THE COURT:  Good afternoon.  Good afternoon to you.

4          MS. GREENWOOD:  Good afternoon, your Honor.  Emma

5     Greenwood, the court agent discovery attorney for the defense.

6          THE COURT:  Good afternoon.  Let me also wish good

7     afternoon to the defendants.

8          All right.  This is the second of the conferences in

9     this case that I have held today.  I held one earlier at 2

10    o'clock and covered the same ground that I am going to cover at

11    today's conference.  I didn't make any decisions save a

12    discrete scheduling decision as to some other defendants at

13    that conference because I wanted to make sure that I had

14    heard from counsel here before making any decision as to any

15    point.

16         Let me just recap for everyone what I'm going to cover

17    today.  First of all, for the benefit really of the defendants,

18    I'm going to review the developments in the case since our last

19    conferences in July.  Then I'm going to call on the government

20    and coordinating discovery counsel, Ms. Greenwood, briefly to

21    update us on discovery issues in the case.  And I'll open the

22    floor to defense counsel to raise any issues regarding the

23    provision to them of the practical access to Rule 16 discovery.

24         I'm going to then call on the government and the

25    defense to update me on the status of the capital review

1     process and the status of mitigation submissions in the case.

2           I will then turn to what I regard as the most

3     important issues before me today, which involves setting trial

4     dates for the murder defendants and the right configurations of

5     murder defendant units at trial.

6           I also intend to solicit views, if any, on the

7     practices that I should have going forward now that the

8     defendants will have been broken out into different trial

9     groups in terms of meeting together versus separately.

10          I also want to briefly say a word about pending

11    motions with regard to defendants Ramon Lizardi and defendant

12    Miguel Delance, who were at the previous conference.

13          Then I'll open the floor to counsel to raise any

14    topics that I haven't anticipated today.  As you know, I'm

15    always happy to hear individuals' specific issues relating to

16    representation, bail, discovery, whatnot, but if it's really a

17    one-off issue relating to an individual defendant, my

18    preference is it be raised at an individual conference and not

19    in the presence of the large group.

20          Finally at the end I want to report to you the date

21    I've set for the next conference and confirm for all of you the

22    exclusion of time that I have done for the entire murder

23    defendants group for that next conference.

24          So with that, really for the benefit of the

25    defendants, let me take a few minutes and recap for you from my

perspective what has happened in the case between the last

conferences, which were held on July 9th and July 12th, and

now.

Just a bit of history.  For the Group A defendants who

had been scheduled for trial on January 7th, as you will

recall, all of them pled guilty.  At this point I believe all

but one of them has been sentenced.

As to the first group of Group B defendants, the Group

B nonmurder defendants, these are the people who had been

charged in the original indictment of December 2011, they had

been scheduled to go to trial in early June.  Each of them

ultimately pled guilty as of today.  By my count, all but two

of them have been sentenced.

Finally, as of the last conference in July, there had

been a trial scheduled for the second group of Group B

nonmurder defendants.  These are defendants who had been

charged in the superseding indictment returned in December of

2012.

Those defendants had been scheduled to begin trial

this past September 16th.  Ultimately each of those cases too

was resolved without trial.  I have not yet had occasion to

sentence any of those defendants; however, the sentencing

hearings for those defendants are scheduled shortly.

Thus, where we're left is that the only remaining

defendants in the case who have been apprehended and therefore

are before me and who have unresolved issues of guilt or

innocence is the murder defendants.

Another development to report since the last

conferences in July is that I issued a decision on a discovery

dispute motion brought by defendant Carlos Urena.  The issue

had to do with whether a particular tape of a 9-1-1 call

relating to the murder of a Ka'Shawn Phillips constituted Rule

16 material as opposed to the Jencks Act material.  I held that

the tape was Rule 16 material and, therefore, subject to the

terms of Rule 16 with regard to a pretrial discovery.  However,

as to a pointed dispute as to that tape, I upheld the

government's decision to redact from that tape certain

identifying information as to that caller.  I did authorize

counsel for Mr. Urena if he wanted to take up that issue

again to do so, and I understand he may at some point down the

road.

The final development to report between July and now

is that I have set a trial date for three defendants who will

go to trial on March 10.  And they are the defendants who are

implicated in the Ka'Shawn Phillips murder:  Specifically,

Carlos Urena, Juan Franco and Limet Vasquez.

As you will recall, at the July conferences, counsel

for those defendants asked that a trial date be set for them.

I couldn't do so at the time or it wasn't responsible to do so

because the capital review process was as yet not completed.

1    However, I've since been notified by the government that the

2    Department of Justice has decided not to pursue the death

3    penalty as to those three defendants.  As a result, after

4    soliciting the views of the government and the defense as to a

5    trial date, I set down the date of those three defendants'

6    trial to begin on Monday, March 10, 2014.  The government has

7    estimated that that trial will last between three and four

8    weeks.

9              I have set a schedule for pretrial motions in that

10   case in which initial defense motions are due on November 22nd,

11   and earlier today I set down a conference for those three

12   defendants for November 15th.

13             That catches us up, I think, up till now.  So what I'd

14   now like to do is just briefly get a report as to discovery.

15   Again, I asked the government to report on this last time, but

16   I'll ask you the same question.  I'm interested in getting a

17   report from you on whether there has been any additional Rule

18   16 discovery obtained or that's in the process of being

19   obtained since the July conference and whether you're aware of

20   any issues that have arisen with regard to the provision or

21   access to the defense of that discovery.

22             MS. HELLER:  Your Honor, there has been no additional

23   discovery provided since the July conferences and we're not

24   aware of any outstanding disputes.

25             THE COURT:  All right.  Very good.

1          Ms. Greenwood, let me just call on you.

2          Ms. Greenwood had submitted to me a memo that briefly

3   described her activities between July and now, which included

4   updating the database tools that she has developed to make the

5   defense's lot in viewing the various discovery materials

6   easier.

7          Again, I thank you for all of your hard work.

8          She also described the removal of various defendants

9   who have pled guilty from the discovery list served and a

10  variety of other organizational steps.

11         Ms. Greenwood, anything to report beyond that on your

12  end and are you aware of any practical problems that the

13  defense or their defendants are experiencing and accessing

14  discovery?

15         MS. GREENWOOD:  I am not aware, your Honor, of any

16  issues with the clients or counsel for that matter accessing

17  any of the discovery.  Everything that the government has

18  provided to me has been distributed to counsel.

19         THE COURT:  Okay.  Thank you.  Again, I appreciate all

20  your hard work.

21         Let me then turn the floor to defense counsel.  When I

22  had the conference earlier today, I was pleased not to have any

23  reports of any practical impediments and the only issue that

24  came up was one counsel raising the question of the timing at

25  which certain 9-1-1 tape recordings, which the government is

1    attempting to obtain, will be provided to them.   Other than

2    that, there were no discovery issues raised.

3              Do any of you have any discovery issues that you want

4    to put on the table now?

5              MR. de CASTRO:  No, your Honor.

6              THE COURT:  Very good.  Thank you.

7              The next topic I want to raise is the capital review

8    process.  On July 18th, following the last set of conferences

9    in this case, I issued an order that set February 3rd, 2014, as

10   the final deadline for defendants to make mitigation

11   submissions.  That was also the date that a number of defense

12   counsel had asked me to set.

13             My order noted that the longer it took, though, for a

14   defendant to make a mitigation submission, the longer it likely

15   would take for the Attorney General to render a decision.  As a

16   result, I directed that although the defense had until the

17   beginning of February to make any mitigation submissions, any

18   defense counsel that intended to make a mitigation submission

19   after today, November 1st, was required by today to submit to

20   me a sworn declaration attesting -- and I'll quote my order --

21   "that his or her client is aware of the potential impact on the

22   trial schedule of making a mitigation submission after that

23   date and approves of the decision to do so."

24             I recited for the record at the last conference that

25   as of 2:30 today, I had not received any such sworn

1    declarations from defense counsel.

2            Turning to the government, your letter of October 24th

3    recites that there are 11 defendants who are capital eligible

4    as to whom the Attorney General had not rendered a decision

5    whether to seek a death penalty and that you had received as of

6    October 24th only two mitigation submissions.

7            I believe, Ms. Heller, that you represented to me that

8    in the weeks since then, you've received one more?

9            MS. HELLER:  Yes, your Honor.  Today we received a

10   mitigation submission on behalf of Jugo Cespedes.  So in this

11   group here, we have mitigation submissions from Mr. Geraldo and

12   Mr. Cespedes, but not as to Mr. Beltran.

13           THE COURT:  So Mr. Beltran is the only defendant as to

14   whom there has been no mitigation submission as to whom that's

15   a relevant concept in this group?

16           MS. HELLER:  In this group, yes, your Honor.

17           THE COURT:  Very good.

18           Mr. Beltran -- that's, I guess, Mr. Ginsberg?

19           MR. GINSBERG:  Yes, your Honor.

20           THE COURT:  May I ask you what your intention is with

21   regard to the filing of the mitigation submission?

22           MR. GINSBERG:  All the mitigation work has been

23   completed and I believe I should be able to make my submission

24   within the next ten days.  Since the July date I've had two

25   trials, just finishing the last one yesterday.  So now I'm

1    gathering all of the material and I'll write the report.

2              THE COURT:  All right.  I'm glad to hear it.  Just to

3    ensure compliance with the order that I issued, would you

4    please just obtain for me the declaration I described that

5    explains that your client is aware of the consequences

6    potentially of the making of the mitigation submission after

7    November 1st?  And please get that to me within several days.

8              MR. GINSBERG:  If I think I'm going to have my

9    submission in within the next week or so, can I put the

10   submission in without having the declaration as well?

11             THE COURT:  You know, I'm going to ask you to do it if

12   only because I think there were several at the last conference

13   who were in the same boat, so I'd like to treat you

14   symmetrically.  I understand that if your submission comes in

15   only a week after the November 1st date, the likely delay

16   caused by that is no more than likely a week, but nevertheless

17   as a matter of good form I'd like to hold you to the same

18   standards as the other counsel.

19             MR. GINSBERG:  Very good.

20             THE COURT:  Okay.  I asked government counsel whether

21   it had-- whether since October 24th the Attorney General had

22   reported any further decisions as to the capital charges with

23   regard to any of the defendants in this case.  The answer was

24   no.  In effect, the only defendants at this conference or the

25   one at 2 o'clock as to whom any such decisions had been

1     reported are the three who are going to trial on March 10th.

2              Also, just for the benefit of the defendants, the

3     government's letter of October 24th stated that in order to

4     expedite the capital review process, the government was

5     preparing a group or global submission that it intends to

6     submit to the Department of Justice in November.  And we

7     expects, if ordinary form follows, to receive an answer between

8     12 and 16 weeks from then, which would put us perhaps in March.

9              And I asked Ms. Heller whether that submission would

10    potentially put the Attorney General in a position to make a

11    decision as to all of the defendants in this case who are

12    potentially facing capital charges with or without a mitigation

13    submission and the answer was, yes, that it potentially would

14    do so.

15             So that's where we're at as to the capital review

16    process.

17             The next issue involves the setting of trial

18    configurations and schedules.  And, again, I'm going to recap

19    what I covered at the last conference.  As I mentioned, I've

20    set the March 10th trial date for defendants Carlos Urena, Juan

21    Franco and Limet Vasquez.  And I want to put on the record here

22    as I did at the last conference the reasons I did that.

23             Those three defendants had specifically requested back

24    in July that a trial date be set for them and I wanted to honor

25    that preference, that request.

1        Second, the capital review process as to those three

2    defendants was complete.

3        Third, the Phillips murder, in which all three of them

4    are said to have been complicit, supplied a valid basis for

5    joining those three defendants at a trial to be held soon.

6        That joinder is without prejudice to the right of any

7    of those defendants to seek a severance, of course.  The

8    government had proposed as an alternative that I join those

9    three defendants with, I think, four others who are implicated

10   in the murder of ^Miguel Perez.

11       That was to my mind a plausible credible option, but

12   ultimately I decided to try the two cases separately for these

13   reasons:  First, it didn't appear that combining the two cases

14   for trial would cut down on trial time.  Each of the two trials

15   was estimated to be at least three to four weeks.  The joint

16   trial was estimated to last two months.  So it didn't look like

17   we were going to reduce trial time.

18       At the same time, a joint trial would force twice as

19   many defendants and twice as many defense counsel to sit

20   through a two-month trial rather than sitting through a

21   one-month trial.  So from an efficiency point of view, there

22   was not a net gain and perhaps a net loss.  A two-month trial

23   loss in my experience would not negate the process of jury

24   selection.  It's simply a lot easier with a three- or four-week

25   trial.

1           A seven-defendant trial also potentially would

2     compromise the ability of the jurors to keep their eyes focused

3     on the guilt or innocence of each individual defendant.

4           Finally, one of the defendants implicated in the Perez

5     murder, Ramon Lizardi, is subject and remains subject to the

6     capital review process.  I didn't want that process to delay

7     any further getting defendants Urena, Franco and Vasquez to

8     trial.  Those were the reasons I broke out that group as the

9     first group to be tried.  And I've set, as I said earlier, a

10    conference date for that group which henceforth will not be

11    conferencing with the large group but just on its own.

12          Now, in my order of October 18, I asked the government

13    to propose trial configurations for the other defendants,

14    including those here in this room, and a logical sequencing of

15    the trials.

16          The government on October 24th in its letter gave me

17    its proposed sequencing and clustering of the defendants for

18    trial.  And I thought that letter was extremely thoughtful and

19    helpful.  In my order I invited defense counsel to comment in

20    writing on the government's proposed trial sequence and

21    configuration.  I asked defense counsel to do so by this

22    Wednesday, October 30th.

23          I also directed any defense counsel who is now seeking

24    the setting of a trial date for his or her client to let me

25    know so in writing, again by October 30th.  I did not receive

1    any defense submissions in response to either of those

2    directives.

3         In light of that, having given a lot of thought to it,

4    let me tell you, as I did the counsel at the previous

5    conference, what my present intention is vis-a-vis the setting

6    of trial dates in this case.

7         First of all, I intend next week to issue an order

8    that sets a trial schedule for the remaining defendants in this

9    case broken out into different configurations.  Why am I doing

10   that?  Setting trial dates now helps assure a speedy trial.

11        I am mindful that, putting aside the March 10 trial

12   defendants, only one defendant of the murder defendants, Maria

13   Mejia, even requested that I submit a trial date.

14   Nevertheless, my view is that I have an independent

15   responsibility to assure the speedy trial interests of the

16   defense.  The sooner I can get trials down on the calendar, the

17   sooner the trials will be held.

18        I'm also very much mindful that there are a lot of

19   defendants and a lot of counsel whose schedules need to be

20   accommodated.  The sooner I set the case down for trial, the

21   better it guards against scheduling delay and scheduling

22   conflict.  And I would note that although no defense counsel

23   asked me to set a trial date, no counsel asked me not to do

24   so.

25        My intention is to configure the various trials

1   consistent with the configurations that the government proposed

2   in its March 24th letter.  I find the configurations to be

3   logical.  There appear to be logical connections that justify

4   the joinder of the defendants in each group with the others in

5   that group.  The lengths of the trials that the government

6   envisions are also to my mind manageable.

7              That said, of course I'm reserving the right of any

8   defendant to move for severance.  I'm open to hearing arguments

9   for severance.  If there is a persuasive meritorious argument

10  for an individual defendant and there's a severance, of course

11  I'll grant it.  If and when that point comes, we would then

12  figure out whether such a severed defendant belongs in a trial

13  by himself or herself or appended to a different group.

14             I'm also mindful, as I said at the last conference,

15  that the capital review process is underway.  In the event the

16  Attorney General decides to pursue the death penalty against an

17  individual defendant, I would likely need to revise the trial

18  schedule at least as to that defendant.  We will cross that

19  bridge when and if we come to it.

20             My premise in setting the schedule that I'm about to

21  set is that capital charges will not be pursued against anyone.

22  In acting on that premise, I'm not of course expressing a view

23  as to what the right outcome is in the matters before the

24  Attorney General.  I'm merely trying to set a rational schedule

25  based on what I regard as reasonable assumptions about what may

1     happen.

2              So as to the sequence of the trials, I expect to set

3     them in the sequence proposed by the government with one

4     exception.  Specifically I expect to set the trial that the

5     government identifies as proposed trial three, which involves

6     one defendant, Julian Lopez, ahead of the trial that the

7     government identifies as proposed trial two, which involves

8     four defendants:  Maria Mejia, Lenin Morel, Ramon Lizardi and

9     Miguel Delance.

10             The Lopez trial is focused on one murder, that of

11    ^Isse Dominguez.  I had said at the earlier conference that I

12    intended to set that case down for May, which would still be my

13    preference.  That would create some space between the end of

14    the March 10th trial and the beginning of the next trial.  It

15    may be that that trial pushes to April.  We'll see just based

16    on the scheduling issue presented by counsel for that

17    defendant, but I'll work on that.

18             But the reason I'm expediting the Lopez trial ahead of

19    the proposed trial two with those four defendants is this:

20    First, Julian Lopez is not subject to the capital review

21    process.  That process, therefore, will not complicate the

22    setting of a trial date for him.  By contrast, one of the

23    defendants in what the government has called proposed trial

24    number two, Mr. Lizardi, is subject to the capital review

25    process.  The government forecasts that that process may not

1    run its course until some 12 to 16 weeks after the government's

2    submission later this month of proposed global recommendations.

3         Second, as a matter of scheduling, the Lopez trial is

4    shorter.  It's a better fit for the Court's existing schedule

5    in May -- or, for that matter, April -- than the four-defendant

6    longer trial.  I expect to set the trial for defendants Mejia,

7    Morel, Lizardi and Delance in all likelihood for July, creating

8    some space between the May and the July trials.  The July trial

9    is supposed to last three weeks.

10        Again, I'm going to be sitting down and trying to come

11   up with concrete dates.  Basically we're looking at the March

12   10 trial for the Urena group, either April or May for Lopez,

13   and then the beginning of July for the proposed trial three.

14   Two, rather.  The Maria Mejia, Lenin Morel, Ramon Lizardi and

15   Miguel Delance group.

16        As to proposed trial four, which contains nine

17   defendants, I expect, as the government has proposed, that I

18   set that down to start in December 2014.  Those defendants are

19   Felix Lopez-Cabrera, Luis Beltran, Javier Beltran, Michael

20   Cabrera, Miguel Strong, Yandel Silverio, Carlos Lopez, Andry

21   Lazala and Raymond Sosa.  The government expects that that

22   trial will last between two and three months.  It is focused on

23   multiple murders, the murders of ^Ramon ^Cassul, David ^Avilla,

24   Gomez ^Irving Cruz, ^Raffe Tavarez and Freddie ^Polanco, among

25   other charged defenses.  A September trial date will give

1    plenty of time for the capital review process to run its course

2    with respect to those of those nine defendants who were part of

3    that group who were subject to the capital review process.

4            I've stated, as you know, a number of times that my

5    preference is not to have joint trials involving more than

6    approximately five defendants, but at this early stage it seems

7    to me safe to set down nine for trial.  I operate on the

8    assumption, which is very well-grounded in the experience of

9    this case anyway, that not all nine defendants are likely to

10   ultimately go to trial and that the number of defendants will

11   thin out.  If that proves wrong and we have nine or close to

12   nine defendants that ultimately goes to trial, I will then

13   decide how to proceed and whether to break off some defendants

14   into a separate unit.

15           Finally, I expect to set down the proposed trial

16   number five as the government has proposed for January 2015.

17   That trial involves five defendants:  Raymond Sosa, Hargelis

18   Vargas, Manuel Geraldo, Anderson Abreu and Jugo Cespedes.  It

19   is focused on the murder of Orlando ^Celegado and other charged

20   offenses.

21           Under this configuration, Mr. Sosa would be subject to

22   two trials.  Everyone else would be tried in just one case.  My

23   assessment, given the overlapping charges here and the sheer

24   size of the case, is that this is actually quite efficient to

25   have one defendant where there is a need for multiple trials.

1    And I had a colloquy briefly with Mr. Sosa's counsel about

2    accommodating her schedule needs at the last conference.

3            So with regard to all that, those are my current

4    inclinations, but I intend to think on it over the weekend and

5    issue an order early next week.

6            Let me ask the defense counsel over here if they have

7    any feedback for me now as to the schedule.

8            MR. de CASTRO:  For defendant Lenin Morel, I only have

9    one question, which is you had mentioned April or May for the

10   Lopez trial.

11           THE COURT:  Right.

12           MR. de CASTRO:  Is there a chance that the July

13   proposed date would be moved up to June?

14           THE COURT:  No.  I think what I'm inclined to do is to

15   keep your group for early July.  Conceivably one counsel at the

16   last conference referenced a particular scheduling issue.  And

17   it may be that I, for example, move jury selection to the week

18   earlier so that the actual trial of the case begins at the

19   beginning of July.  But my instinct is for a variety of

20   reasons, including the ones I've stated, it makes sense to have

21   that trial in July.  So I'm likely to do that.  But, again, by

22   early to mid next week, I'll have an order that clarifies it.

23           I take it you don't have a trial conflict?

24           MR. de CASTRO:  No, I'm fine either way.

25           THE COURT:  Glad to hear it.

1          I think that makes sense.  One member of that group is

2   subject to the capital review process.  The government

3   persuasively explains why those defendants logically ought to

4   be tried together.  I can't have any assurance that the capital

5   review process will run its course for that group until, even

6   on the government's estimate, late March and there's no

7   assurance of that.  It seems to me a rational thing to do, to

8   put this group down at a date when we will have certainty that

9   the process has run its course.

10          MR. de CASTRO:  I agree.

11          THE COURT:  I'm not seeing anyone else rise.

12          All right.  In terms of working configurations going

13   forward, what I'm going to do is break out as separate units,

14   not conferencing with the large group, the Urena group, the

15   group that's going to trial on March 10th, and also the Lopez

16   group, the one-defendant trial.

17          The rest of the defendants -- those in the third,

18   fourth and fifth trial, the ones I'm currently anticipating for

19   July, September and next January -- will, for the time being,

20   continue to conference together.  But in fairly short order,

21   probably after the next group conference, I will break out at

22   least the first of that group, the July group that, for example

23   was just the subject of my colloquy with counsel for Lenin

24   Morel.

25          Any reason not proceed in that fashion?

1          MR. de CASTRO:  No.

2          THE COURT:  At the last conference I also mentioned

3     there are two pending sets of motions, both seeking either

4     Brady particulars or discovery.  One is from defendant Lizardi,

5     and I have the government's response.  The other is from

6     defendant Delance, and the government at the last conference

7     promised to get me its response by November 15th.  And I expect

8     in fairly short order to turn to those two motions together.

9          So that covers at great length the topics that I had

10    from my perspective for all of you.

11         Are there other issues that counsel want to raise with

12    me?

13         Okay.  All right.  Very good.

14         At the last conference, I set down our next

15    conferences in this case for July the 7th-- excuse me, February

16    the 7th, one at 11 a.m. and one at 12:30 p.m.

17         MS. HELLER:  Your Honor, the government would propose

18    to have a single conference because we're losing four

19    defendants.  It basically would be the same number as we had in

20    the first conference today.  It might make everything easier,

21    especially for the Court.

22         THE COURT:  I appreciate your solicitude and you're

23    right.  That's fine.  Why don't you try-- we also now have the

24    larger ceremonial courtrooms in this building.  That's fine

25    with me.  I'll clarify that in an order.  You've been usually

having defense counsel reach out to the government to sort out

who's going when, so if you could just ask everyone to be there

at 11.  That's sensible.

MS. HELLER:  Most people prefer the first conference.

THE COURT:  That's when the action happens and that's

when I'm not just a newsreader.  So that's appreciated.  Very

good.

Then I guess the issue is just the exclusion of time.

The government moved at the last conference that time be

excluded for all murder defendants until the next conference.

I put on the record the variety of reasons why that's justified

which involve the capital review process, the need for

defendants now that they will soon be in trial configurations

to begin to mobilize for trial, the continued review of

discovery, the pending several motions and the likelihood of

others.

Does any defense counsel object to the exclusion of

time until February the 7th?

MR. GINSBERG:  No.

MR. de CASTRO:  No.

THE COURT:  Okay.  Thank you.  One moment.

(Pause)

THE COURT:  All right.  Is there anything further from

the government?

MS. HELLER:  No, your Honor.  Thank you.

1          THE COURT:  Anything from the defense?

2          MR. GINSBERG:  No, your Honor.

3          THE COURT:  All right.  We stand adjourned.

4          (Adjourned)